## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

_____

JOHN DOE #1 – JOHN DOE #30;  )
JANE DOE #1 – JANE DOE #9,  )
      )
      Plaintiffs,   )
      )
   v.     )   Civil Action No.:
      )
LLOYD J. AUSTIN, III   )
   Secretary of Defense   )
   Department of Defense   )
   1000 Defense Pentagon   )
   Washington, DC 20301-1000, )
      )
ANTONY J. BLINKEN   )
   Secretary of State   )
   Department of State   )
   2201 C St. NW   )
   Washington, DC 20520-0001, )
      )
MERRICK B. GARLAND   )
   Attorney General   )
   Department of Justice   )
   950 Pennsylvania Ave. NW   )
   Washington, DC 20530-0001, )
      )
ALEJANDRO N. MAYORKAS   )
   Secretary of Homeland   )
      Security   )
   Department of Homeland   )
      Security   )
   2707 Martin Luther King,   )
      Jr. Ave.   )
   Washington, DC 20528-1008, )
      )
GINA M. RAIMONDO   )

```
       Secretary of Commerce          )
       Department of Commerce         )
       1401 Constitution Ave. NW      )
       Washington, DC 20230-0002,     )
                                      )
TOM J. VILSACK                        )
       Secretary of Agriculture       )
       1400 Independence Ave. SW      )
       Washington, DC 20250-0002,     )
                                      )
JANET L. YELLEN                       )
       Secretary of the Treasury      )
       1500 Pennsylvania Ave. NW      )
       Washington, DC 20220-0002,     )
                                      )
WILLIAM J. BURNS                      )
       Director                       )
       Central Intelligence Agency    )
       1000 Colonial Farm Rd.         )
       McLean, VA 22101               )
                                      )
                     Defendants.      )
_____)
```

## **COMPLAINT**

On September 9, 2021, President Biden issued Executive Orders 14042 and 14043, mandating that federal employees and contractors provide proof of having been inoculated with an unlicensed COVID-19 vaccine, or face disciplinary consequences in their jobs. In rushing to force COVID-19 vaccinations on the federal workforce, the President's edicts violate longstanding statutory prohibitions against inoculations with unlicensed vaccines; the individual rights of government employees and contractors

under the Rehabilitation Act, the Americans with Disabilities Act, and the United States Constitution; and exceed the President's statutory authority in regulating federal employees. Accordingly, plaintiffs who are representative of myriad Federal Agencies respectfully request relief from this Court in the form of injunctive relief stopping these illegal, and unnecessarily broad and wide-ranging mandates.

## **PARTIES**

1. Plaintiffs[1] are either employed by the named Defendant Agencies or employed as federal government contractors whose customers are the

---

[1] Given the hostility present in recent speeches by the President and the recent real-world example of Plaintiffs successfully challenging a school district's mask mandate, Plaintiffs have real concern for their safety should their names be made public, and have filed this matter under pseudonym. *See, e.g.* CNBC "Biden says unvaccinated Americans are 'costing all of us' as he presses Covid vaccine mandates" (Biden said unvaccinated people are hindering economic growth, costing jobs and putting unnecessary strain on the health-care system), Sept. 24, 2021, reported at https://www.cnbc.com/2021/09/24/biden-says-unvaccinated-americans-are-costing-all-of-us-as-he-presses-covid-vaccine-mandates.htmlt (last visited Jan. 4, 2022); CNN, "Biden warns of winter of 'severe illness and death' for unvaccinated due to Omicron" ("We are looking at a winter of severe illness and death for the unvaccinated -- for themselves, their families and the hospitals they'll soon overwhelm."), reported at https://www.cnn.com/2021/12/16/politics/joe-biden-warning-winter/index.html (last visited Jan. 4, 2022); Presidential Press Conference, Jan. 4, 2022 ("The unvaccinated are taking up hospital beds and crowding emergency rooms and intensive care units. That's displaced other people who need access to those hospitals. …So there's no excuse, no excuse for anyone being unvaccinated. This continues to be a pandemic of the unvaccinated …. And for parents with kids too young to be vaccinated, surround your kids with people who are vaccinated"), reported at https://www.rev.com/blog/transcripts/joe-biden-covid-omicron-spike-speech-transcript (last visited Jan. 5, 2022); Texas School Board Member Publicized Personal Info of Parents who Challenged Mask Mandate," Dec. 6, 2021, reported at: https://www.nationalreview.com/news/texas-school-board-member-publicized-personal-info-of-parents-who-challenged-mask-mandate/ (last visited Jan. 4, 2022).

named Defendant Agencies, and who have been directed to provide their vaccination statuses and receive the COVID-19 vaccine under Executive Orders 14042 and 14043. Each Plaintiff either remains unvaccinated or has not provided his or her vaccination status to Defendant Agencies and faces either termination as a federal employee or removal from a federal government contract if he or she remains unvaccinated or refuses to provide his or her vaccination status.

2. Defendant Lloyd J. Austin, III, Secretary of Defense, Department of Defense, has implemented the Executive Orders by mandating that all employees of the Agency and all contractors who do business with the Agency be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including termination or removal from the contract. The Department of Defense is present in, and conducts business in, this District.

3. Defendant Antony J. Blinken, Secretary of State, Department of State, has implemented the Executive Orders by mandating that all employees of the Agency and all contractors who do business with the Agency be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including termination or removal from the contract. The Department of State is present in, and conducts business

in, this District.

4. Defendant Merrick B. Garland, Attorney General, Department of Justice, has implemented the Executive Orders by mandating that all employees of the Agency and all contractors who do business with the Agency be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including termination or removal from the contract. The Department of Justice is present in, and conducts business in, this District.

5. Defendant Alejandro N. Mayorkas, Secretary of Homeland Security, Department of Homeland Security, has implemented the Executive Orders by mandating that all employees of the Agency and all contractors who do business with the Agency be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including termination or removal from the contract. The Department of Homeland Security is present in, and conducts business in, this District.

6. Defendant Gina M. Raimondo, Secretary of Commerce, Department of Commerce, has implemented the Executive Orders by mandating that all employees of the Agency and all contractors who do business with the Agency be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or face disciplinary action, up to and including termination or

removal from the contract. The Department of Commerce is present in, and conducts business in, this District.

7. Defendant Tom J. Vilsack, Secretary of Agriculture, Department of Agriculture, has implemented the Executive Orders by mandating that all employees of the Agency and all contractors who do business with the Agency be "fully vaccinated" against COVID-19, and provide proof of said vaccination status, or face disciplinary action, up to and including termination or removal from the contract. The Department of Agriculture is present in, and conducts business in, this District.

8. Defendant Janet L. Yellen, Secretary of the Treasury, Department of the Treasury, has implemented the Executive Orders by mandating that all employees of the Agency and all contractors who do business with the Agency be "fully vaccinated" against COVID-19, and provide proof of said vaccination status, or face disciplinary action, up to and including termination or removal from the contract. The Department of the Treasury is present in, and conducts business in, this District.

9. Defendant William J. Burns, Director, Central Intelligence Agency, has implemented the Executive Orders by mandating that all employees of the Agency and all contractors who do business with the Agency be "fully vaccinated" against COVID-19, and provide proof of said vaccination, or

face disciplinary action, up to and including termination or removal from the contract. The Central Intelligence Agency is present in, and conducts business in, this District.

## JURISDICTION AND VENUE

10. This action is brought under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*, challenging the Executive Orders' purposeful evasion of the statutory requirements set forth under Sections 501 and 503 of the Rehabilitation Act of 1973, as amended (29 U.S.C. §§ 791, 793), Title I of the American with Disabilities Act (ADA) of 1990, as amended (42 U.S.C. § 12101, *et seq.*) and the Federal Food, Drug, and Cosmetic Act (FDCA) (21 U.S.C. § 360bbb-3, *et seq.*). The Executive Orders further impinge on constitutional rights, and were issued in excess of the President's statutory authority to regulate federal employees.

11. Both the Rehabilitation Act and the ADA (together referred to as "the Acts") preclude employers from discriminating against federal employees and federal government contractors on the basis of an actual or perceived disability. The Acts further preclude employers from conducting disability-related inquiries of employees that are not shown to be "job-related and consistent with business necessity." 29 C.F.R. § 1630.14(c). An inquiry is determined to be "job related and consistent with business necessity"

when the employer has a "reasonable belief, based on objective evidence" that the "employee will pose a direct threat due to a medical condition."[2] "The determination that an employee poses a direct threat must be based on an individualized assessment of the employee's present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r).

12. The FDCA authorizes the use of medical products not yet licensed by the Food and Drug Administration (FDA) under "emergency use," but only when the individual is "informed of the option to accept or refuse the administration of the product, … and of the alternatives to the product that are available and of their benefits and risks." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).

13. The Fifth Amendment to the United States Constitution confers rights of bodily integrity and autonomy, and occupational liberty.

14. The mandates were issued under the President's statutory authority under 5 U.S.C. §§ 3301, 3302, and 7301, which allow the President to prescribe regulations for the admission of civil servant applicants, the administration of positions in the competitive service, and the conduct of employees in the executive branch.

---

[2] Equal Employment Opportunity Commission (EEOC) Enforcement Guidance on the ADA and Psychiatric Disabilities at 15, 8 FEP Manual (BNA) 405:7468-69 (1997) (hereinafter "The ADA and Psychiatric Disabilities").

15. The APA permits judicial review of an Executive Order, as implemented by an Agency, which is arbitrary, capricious, not in accordance with law, contrary to constitutional right, in excess of statutory authority, and without observance of procedure required by law. 5 U.S.C. §§ 702, 704, and 706; *see Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). The declaratory relief requested herein is proper under 5 U.S.C. §§ 706(1)-(2).

16. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is the judicial district in which Defendants are located and is where a substantial part of the events or omissions giving rise to the claim occurred.

## STATEMENT OF FACTS

### Development of Vaccines

17. Upon best information and belief, the novel COVID-19 infection first arrived in the United States in or around January 2020. Just a few short months later, then President Trump directed the immediate development of a vaccine under Operation "Warp Speed."

18. True to the Operation's name and the novelty of the virus, equally novel mRNA vaccines were rapidly produced in short order. For the first time in vaccine history, a vaccine was created that did not introduce an inactive

version of the virus into the human body, but rather was designed to "teach our cells how to make a protein—or even just a piece of a protein—that triggers an immune response inside our bodies."[3] From this endeavor were born three vaccines that were, and are, widely available in the United States: the Pfizer-BioNTech COVID-19 vaccine, the Moderna COVID-19 vaccine, and Johnson & Johnson's Janssen COVID-19 vaccine.[4] None of these vaccines are licensed by the FDA; rather, they have been authorized for emergency use under 21 U.S.C. § 360bbb-3 and remain under emergency use authorization as of the time of this filing.[5]

19. On August 23, 2021, the FDA licensed a COVID-19 vaccine originally developed by BioNTech Manufacturing GmbH, a German company, to be jointly manufactured with Pfizer. The companies were authorized to market the vaccine under the name "COMIRNATY."[6] Although co-

---

[3] Centers for Disease Control (CDC), Understanding mRNA COVID-19 Vaccines, available at: https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mrna.html (last visited Jan. 3, 2022).

[4] The Johnson & Johnson vaccine is a viral vector vaccine, not mRNA. Nevertheless, the CDC encourages individuals to receive an mRNA vaccine over the Johnson & Johnson vaccine. CDC, Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety, available at: https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (last visited Jan. 3, 2022).

[5] FDA, Letter of Authorization (Reissued) Janssen COVID -19 Vaccine, available at: https://www.fda.gov/media/146303/download (last visited Jan. 3, 2022); FDA, Letter of Authorization (Reissued) – Pfizer-BioNTCh, available at: https://www.fda.gov/media/150386/download (last visited Jan. 3, 2022); FDA, Letter of Authorization (Reissued) – Moderna, available at: https://www.fda.gov/media/144636/download (last visited Jan. 3, 2022).

[6] FDA, BioNTech Manufacutring GmbH Biologics License Application Approval (Aug. 23, 2021), available at: https://www.fda.gov/media/151710/download (last visited Jan. 3, 2022).

manufactured by Pfizer, COMIRNATY is "legally distinct with certain differences" from the Pfizer-BioNTech COVID-19 vaccine that was, and is, available in the United States; the Pfizer-BioNTech COVID-19 vaccine, which is the only Pfizer vaccine available in the United States, remains under emergency use authorization.[7] COMINARTY is not available in the United States.[8]

## **Issuance of Mandates**

20. President Biden announced the issuance of Executive Orders 14042 and 14043 during a speech he gave on September 9, 2021. He emphasized that while "fully vaccinated" individuals are "highly protected from severe illness even if [they] get Covid-19," and that being fully vaccinated renders these individuals "as safe as possible," the orders were being issued "to protect vaccinated workers from unvaccinated co-workers."[9]

---

[7] FDA, "Vaccine Information Fact Sheet for Recipients and Caregivers about COMIRNATY (COVID-19 Vaccine, mRNA) and Pfizer-BioNTech COVID-19 Vaccine to Prevent 2019 (COVID-19) (Aug. 23, 2021)," revised Sep. 22, 2021, at n. 1, attached as Exhibit 4; *see also* FDA "Purple Book" result for COMIRNATY (stating that there is no interchangeable product), available at: https://purplebooksearch.fda.gov/results?query=COVID-19%20Vaccine,%20mRNA&title=Comirnaty (last visited Jan. 3, 2022).

[8] *See* FDA Vaccine Finder, available at: https://www.vaccines.gov/search/ (last visited Jan. 3, 2022), which does not list COMIRNATY as an option for searches seeking vaccination locations in the U.S.

[9] President Biden, Remarks on Fighting the COVID-19 Pandemic, available at: https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/ (last visited Oct. 8, 2021).

21. Order 14043 requires each Agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees." Exec. Order No. 14043, at § 2. The Agencies are to receive all implementation guidance from the Safer Federal Workforce Task Force (Task Force). *Id.*

22. The Task Force set a deadline of November 22, 2021 for all federal employees to be vaccinated.[10] "Employees will be considered fully vaccinated for COVID-19 2 weeks after they have received the requisite number of doses of a COVID-19 vaccine approved or authorized for emergency use by the U.S. Food and Drug Administration."[11] The Task Force lists the scheduled deadlines for each vaccine; conspicuously omitted from the Force's site is reference to the COMIRNATY vaccine.[12]

23. "Employees who are on maximum telework or working remotely are not excused from this requirement."[13] All federal employees, regardless if any single employee has previously contracted COVID-19, are required to receive the vaccination.[14]

---

[10] Safer Federal Work Force Task Force, Frequently Asked Questions, "Vaccinations," available at: https://www.saferfederalworkforce.gov/faq/vaccinations/ (last visited Jan. 3, 2022).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

24. Federal employees who failed to comply with the requirement to be fully vaccinated by November 22, 2021, "are in violation of a lawful order."[15] "Employees who violate lawful orders are subject to discipline, up to and including termination or removal."[16]

25. The Task Force states that employees are permitted to request exceptions, but provides nothing further outside of an admonishment that, "All agency personnel designated to receive requests for accommodations should know how to handle requests consistent with the Federal employment nondiscrimination laws that may apply."[17] "If the employee's request for an exception is denied, and the employee does not comply with the vaccination requirement, the agency may pursue disciplinary action, up to and including removal from Federal service."[18]

26. The Task Force provides a link to a "medical exception" request, but the medical exception focuses solely on whether a medical provider determines the individual employee has a "medical condition" which renders the circumstances unsafe for the employee to receive the vaccine.[19] The

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] Template – Request for a Medical Exception to the COVID-19 Vaccination, available at: https://www.saferfederalworkforce.gov/downloads/DISABILITY%20REQUEST%20FORM%20-%2020211004_510pm%20-%20MH508.pdf (last visited Jan. 3, 2022).

exception does not allow for a provider to determine if the unvaccinated employee poses a direct threat to others by remaining unvaccinated.[20]

27. Medical exceptions are typically based on "contraindications," or reasons why the vaccine should not be given to the individual. The only contraindication listed for the Pfizer-BioNTech COVID-19 vaccine, the Moderna COVID-19 vaccine, and the Johnson & Johnson/Janssen COVID-19 vaccine is "severe allergic reaction (e.g., anaphylaxis) to any component of the" respective vaccine.[21]

28. Each Defendant Agency has fully implemented this guidance.

29. Order 14042 applies to all federal government service contractors and subcontractors operating on new contracts issued after the date of the order, or on extensions, renewals, or exercised options which occur on existing contracts on or after October 15, 2021. Exec. Order No. 14043, at § 5.(a), 6.(a). Agencies are "strongly encouraged" to implement the Order on all applicable existing contracts. *Id.*, at § 6.(c). The Order directs the Task Force to provide "explanations of protocols required of contractors

---

[20] *Id.*

[21] FDA, *Pfizer-BioNTech COVID-19 Vaccine EUA Fact Sheet for Healthcare Providers Administering Vaccine*, available at: https://www.fda.gov/media/144413/download (last visited Nov. 16, 2021); FDA, *Moderna COVID-19 Vaccine Fact Sheet for Health Care Providers*, available at: https://www.fda.gov/media/144637/download (last visited Nov. 16, 2021); CDC, Janssen COVID-19 Vaccine, available at: https://www.cdc.gov/vaccines/covid-19/info-by-product/janssen/index.html (last visited Nov. 16, 2021).

and subcontractors to comply with workplace safety guidance." *Id.*, at §

2.(b).

30. With respect to Order 14042, the Task Force prescribes:

> Prior to contractor employees being subject to a contractual requirement to be vaccinated, agencies need to ask about the vaccination status of those onsite contractor employees. Onsite contractor employees must attest to the truthfulness of the response they provide. If an onsite contractor employee chooses not to provide a response, they will be treated as not fully vaccinated for the purpose of agency safety protocols.[22]

31. The Task Force further advises:

> Agencies are strongly encouraged to incorporate vaccination requirements into contracts that are not covered by Executive Order 14042, consistent with applicable law. This might include, for example, incorporating vaccination requirements into contracts in advance of when they are otherwise required by the Executive Order or incorporating requirements into contracts that are not covered by the Executive Order.[23]

32. Each Agency has implemented this guidance in its dealings with

contractors and have indicated that any contractor who is not vaccinated

will be removed from the respective contract. Contractors currently have a

compliance deadline of January 18, 2022, in which to be fully vaccinated.

[24]

---

[22] *See* Safer Federal Work Force, Frequently Asked Questions, n. 9, *supra*.
[23] *Id.*
[24] The Presidential mandate concerning the vaccine of federal contractors has been stayed by *Georgia v. Biden*, No. 1:21-CV-163, 2021 WL 5779939, at *12 (S.D. Ga. Dec. 7, 2021). The matter is on appeal, however, and does not address the issues present in this case.

## Evolving Science: Vaccinated v. Unvaccinated

### No Difference in Viral Load

33. In issuing the Executive Orders, the President asserted it was the unvaccinated, not the vaccinated, who were the sole source of COVID-19 spread. Scientific studies suggest otherwise. On September 29, 2021, a preliminary report from a study conducted by the Genome Center, University of California, Davis, stated that a review of both vaccinated and unvaccinated individuals resulted in the following:

> A total of 869 samples, 500 from HYT and 369 from UeS, were included in the analysis. All analyzed samples from HYT were asymptomatic at the time of collection and 75% of the positive samples were from unvaccinated individuals (N=375). Positive samples from UeS were from both symptomatic (N=237) and asymptomatic individuals (N=132). The frequency of vaccine breakthroughs among the UeS samples (171 fully vaccinated, 198 unvaccinated) was greater than among the HYT samples reflecting the different types of populations sampled. The Delta variant was the predominant variant detected in both populations (Supplementary Table 1).
>
> There were no statistically significant differences in mean [cycle threshold] Ct-values of vaccinated (UeS: 23.1; HYT: 25.5) vs. unvaccinated (UeS: 23.4; HYT: 25.4) samples. In both vaccinated and unvaccinated, there was great variation among individuals, with Ct-values of 30 in both UeS and HYT data (Fig. 1A, 1B). Similarly, no statistically significant differences were found in the mean Ct-values of asymptomatic (UeS: 24.3; HYT: 25.4) vs. symptomatic (UeS: 22.7) samples, overall or stratified by vaccine status (Fig. 1B). Similar Ct-values were also found among

different age groups, between genders, and vaccine types
(Supplemental Figure 1).

In all groups, there were individuals with low Ct-values
indicative of high viral loads. A total of 69 fully vaccinated
individuals had Ct-values <20. Of these, 24 were asymptomatic
at the time of testing.

Exhibit 1, at 6. The study goes on to note:

A substantial proportion of asymptomatic, fully vaccinated
individuals in our study had low Ct-values, indicative of high
viral loads. Given that low Ct-values are indicative of high levels
of virus, culture positivity, and increased transmission [11], our
detection of low Ct-values in asymptomatic, fully vaccinated
individuals is consistent with the potential for transmission from
breakthrough infections prior to any emergence of symptoms.

*Id.* at 7. Even now, as the Omicron variant has spread, it is increasingly

reported that the majority of those becoming infected with the variant are

vaccinated, as opposed to unvaccinated. [25]

34. The findings of the above study were consistent with others conducted in

Massachusetts and Singapore, in which "individuals with vaccination

---

[25] *See*, *e.g.* "Omicron is spreading at lightening speed. Scientists are trying to figure our
why," NPR, Dec. 31, 2021 ("Scientists who traced the superspreader event concluded it was
evidence that omicron was 'highly transmissible' among fully vaccinated adults.") reported
at https://www.npr.org/sections/goatsandsoda/2021/12/31/1067702355/omicron-is-spreading-
like-wildfire-scientists-are-trying-to-figure-out-why (last visited Jan. 5, 2022); "Covid
Updates: Omicron Drives New U.S. Virus Cases to a Daily Record," The New York Times,
Dec. 29, 2021 ("[It] was increasingly clear that vaccinated people are being infected with
Omicron, meaning that there was a reduction in the capacity of vaccines to neutralize the
virus…") reported at https://www.nytimes.com/live/2021/12/29/world/omicron-covid-vaccine-
tests (last visited Jan. 5, 2022); "Most reported U.S. Omicron cases have hit the fully
vaccinated – CDC," Reuters, Dec. 10, 2021, reported at
https://www.reuters.com/world/us/most-reported-us-omicron-cases-have-hit-fully-
vaccinated-cdc-2021-12-10/ (last visited Jan. 5, 2022).

breakthroughs caused by the Delta variant had similar Ct-values as

unvaccinated individuals." *Id.* Ultimately, this means the unvaccinated

individual who contracts COVID-19 and has the same Ct-values as a

vaccinated person who contracts COVID-19 is no more likely to spread the

virus than the vaccinated individual. Based on this and other studies,

CDC itself recently acknowledged that the vaccine is not effective at

preventing the spread of the infection.[26]

<u>The Efficacy of Natural Immunity</u>

35. The internet is replete with studies confirming the lasting immunity to

COVID-19 experienced by individuals who have previously contracted the

virus. One notable study is from the Cleveland Clinic, which found that

individuals previously infected with COVID-19 did not suffer reinfection,

and that ultimately, "Individuals who have had SARS-CoV-2 infection are

unlikely to benefit from COVID-19 vaccination." Exhibit 2, at 2.

---

[26] *See* "CDC Shifts Pandemic Goals Away from Reaching Herd Immunity,"  L.A. Times, Nov. 12, 2021, (comments by Dr. Jefferson Jones, CDC COVID-19 Epidemiology Task Force. "…no vaccine has proved reliable in blocking transmission of the virus…") reported at <u>https://news.yahoo.com/cdc-shifts-pandemic-goals-away-130028307.html</u> (last visited Jan. 3, 2022(; "Vaccines appear weak at blocking Omicron, better against severe disease", Reuters, Dec.13, 2021 (models show that "…early after two doses of an mRNA vaccine from Pfizer/BioNTech or Moderna <u>(MRNA.O)</u>, efficacy against symptomatic infection from Omicron is only about 30%, down from about 87% versus Delta… Protection against symptomatic infection is "essentially eliminated" for individuals vaccinated more than four months earlier.") reported at <u>https://www.reuters.com/business/healthcare-pharmaceuticals/vaccines-appear-weak-blocking-omicron-infection-shots-may-reduce-long-covid-2021-12-13/</u> (last visited Jan. 3, 2022).

Genetic Variance

36. For purposes of the ADA and Rehabilitation Act (which require "individual assessments" to determine "direct threat"), one of the most informative studies (published in July 2021) researched why some individuals, to include those living in the same households, had drastically different reactions to the virus, with some contracting the illness and becoming sick and/or symptomatic, and others not contracting the virus at all. The study found that it is the "genetic makeup of an individual [that] contributes to susceptibility and response to viral infection." Exhibit 3, at 1.

## FIRST CAUSE OF ACTION
### (Administrative Procedure Act)

### Agency Implementation of Executive Orders 14042 and 14043 Require Employers to Conduct Unlawful Medical Inquiries in Violation of the Rehabilitation Act and ADA.

37. All preceding paragraphs are incorporated by reference as though fully set forth herein.

38. The APA permits federal District Courts to review final agency action. This review includes Presidential Executive Orders as they are implemented by the Agencies (with the final agency action being the Agencies' implementation of the Executive Orders). The federal District Courts have authority to enjoin the Agencies from enforcing unlawful

Executive Orders.

39. Both Orders are in violation of statutes, as they require the Agencies to conduct unlawful medical inquires.

40. Employers cannot make disability-related inquiries of employees that are not shown to be job related or consistent with business necessity. An inquiry is determined to be job related and consistent with business necessity when the employer has a reasonable belief, based on objective evidence, that the employee will pose a direct threat due to a medical condition.

41. "The determination that an employee poses a direct threat must be based on an individualized assessment of the employee's present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r).

42. "This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." *Id.*

43. Factors for this consideration include:

> (1) The duration of the risk;
>
> (2) The nature and severity of the potential harm;
>
> (3) The likelihood that the potential harm will occur; and
>
> (4) The imminence of the potential harm.

*Id.*

44. Under the mandates, as implemented by the Agencies, no such individual assessment can, or will, be conducted, thus making the requirement to inform of one's vaccine status in the first instance an unlawful disability-related inquiry.

45. A disability-related inquiry is one that seeks to determine if the individual has a disability. Communicable diseases are considered disabilities. *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 289 (1987). By its very nature, requiring an individual to be vaccinated assumes that at some point the unvaccinated individual will contract COVID-19, a communicable disease.

46. But this inquiry cannot be deemed job related because there is no individual assessment being performed to determine individual threat. The rigidity of the vaccination mandate—*i.e.*, receive the vaccine or face termination—does not allow for this necessary, individualized assessment.

47. Not only does the science indicate that whether or how the disease can be contracted varies by individuals, but there is now indication that regardless of this disparity, there is little or no difference in potential for transmission by a vaccinated versus an unvaccinated individual who does contract the virus.

48. The science is nuanced, and so is an individual assessment. Because the mandates, as implemented by the Agencies, do not allow for this

individual assessment, the mandates, as they are being implemented by the Agencies, result in a direct violation of the Rehabilitation Act and the ADA.

49. Accordingly, because the mandates, as implemented by the Agencies, are in direct violation of controlling law, this Court must declare the mandates unlawful and enjoin the Agencies from enforcing them.

## SECOND CAUSE OF ACTION
## (Administrative Procedure Act)

## Agency Implementation of Executive Orders 14042 and 14043 Require Employers to Discriminate Based on a Perceived Disability.

50. Paragraphs 1 through 36 are incorporated by reference as though fully set forth herein.

51. The APA permits federal District Courts to review final agency action. This review includes Presidential Executive Orders as they are implemented by the Agencies (with the final agency action being the Agencies' implementation of the Executive Orders). The federal District Courts have authority to enjoin the Agencies from enforcing unlawful Executive Orders.

52. Both Orders are in violation of statutes, as they require the Agencies to discriminate against individuals on the basis of a perceived disability.

53. Both the Rehabilitation Act and the ADA prohibit discrimination of

federal employees and federal government contractors on the basis of a
perceived disability.

54. Communicable diseases are considered disabilities. Through the issuance
of these mandates, it is presumed that an unvaccinated individual at some
point will contract COVID-19, a communicable disease.

55. Each Agency, in wholly adopting the Task Force's guidance, has stated
that refusal to receive the vaccination will ultimately result in termination
of employment or removal from a contract. In other words, the Agency
presumes that at some point the unvaccinated individual will contract
COVID-19, and is terminating the individual (or in the case of contractors,
removing the contractor from the contract with the Agency) on this
presumption alone.

56. This is discrimination based on a perceived disability. For this reason, the
mandates, as being implemented by the Agencies, cause the Agencies to
violate long-standing regulations, statutes, and court decisions, and
therefore must be found unlawful. This Court should declare the mandates
unlawful and enjoin the Agencies from enforcing the mandates.

### THIRD CAUSE OF ACTION
### (Administrative Procedure Act)

### Executive Orders 14042 and 14043, as Implemented by the Agencies, Violate the FDCA by Requiring Individuals to Involuntarily Receive an Unlicensed Vaccine.

57. Paragraphs 1 through 36 are incorporated by reference as though fully set forth herein.

58. The APA permits federal District Courts to review final agency action. This review includes Presidential Executive Orders as they are implemented by the Agencies (with the final agency action being the Agencies' implementation of the Executive Orders). The federal District Courts have authority to enjoin the Agencies from enforcing unlawful Executive Orders.

59. Defendant Agencies are using both Orders to force federal employees and contractors to receive COVID-19 vaccines.

60. Not a single vaccine *available* in the United States is FDA-licensed; each has only been granted an emergency use authorization status.

61. The FDCA clearly proscribes that a vaccine which has been authorized for emergency use only may not be administered to an individual unless the individual is given an option to refuse or accept the vaccine. In other words, the individual must be given the opportunity to engage in informed consent to the vaccine, and to be able to refuse the shot without consequences to his or her job.

62. By requiring each federal employee and contractor to receive an unlicensed vaccine that has been authorized for emergency use only, the

Orders, as implemented by the Agencies, have simply bypassed this statutory requirement.

63. Accordingly, this Court should find and declare the Orders unlawful as they are in violation of the FDCA, and further enjoin the Agencies from implementing the unlawful Orders.

**FOURTH CAUSE OF ACTION**
**(Administrative Procedure Act)**

**Executive Orders 14042 and 14043, as Implemented by the Agencies, Violate the Procedural Due Process Clause of the Fifth Amendment of the U.S. Constitution.**

64. Paragraphs 1 through 36 are incorporated by reference as though fully set forth herein.

65. The APA permits federal District Courts to review final agency to ensure the action is not in violation of constitutionally protected rights. This review includes Presidential Executive Orders as they are implemented by the Agencies (with the final agency action being the Agencies' implementation of the Executive Orders). The federal District Courts have authority to enjoin the Agencies from enforcing unlawful Executive Orders.

66. The Fifth Amendment confers a protected right to Occupational Liberty. Through termination of an employee or removal of a contractor from a contract on the sole basis of remaining unvaccinated, the Defendant

Agencies impose upon the Plaintiffs a stigma and disability which preclude future employment in the same profession; this act of permanent disqualification implicates and violates Plaintiffs' right to Occupational Liberty.

67. The Fifth Amendment confers a protected right of bodily integrity and autonomy, allowing individuals to refuse coercive medical treatment without consent. The mandates' coercive nature, requiring individuals to choose between their professions and livelihoods, or to receive unwanted medical injections, presents a substantial interference with this constitutionally protected right.

68. The mandates, when fully enacted by Defendant Agencies, violate both constitutional rights. The Court should find and declare the Orders unlawful, and further enjoin the Agencies from implementing the unlawful Orders.

### FIFTH CAUSE OF ACTION
### (Administrative Procedure Act)

### Executive Order 14043, as Implemented by the Agencies, Exceeds Statutory Authority.

69. Paragraphs 1 through 36 are incorporated by reference as though fully set forth herein.

70. The APA permits federal District Courts to review final agency action to

ensure the action is not in excess of statutory authority. This review includes Presidential Executive Orders as they are implemented by the Agencies (with the final agency action being the Agencies' implementation of the Executive Orders). The federal District Courts have authority to enjoin the Agencies from enforcing unlawful Executive Orders.

71. There is no statute which permits the President to issue or enforce this mandate.

72. Executive Order 14043 was issued pursuant to the President's stated authority under 5 U.S.C. §§ 3301, 3302, and 7301. Section 3301 allows the President to make regulations regarding the application and admission of prospective civil servants. Section 3302 allows the President to make rules governing the operation of the competitive service, and when individuals may be excepted from competitive service. Section 7301 permits the President to prescribe regulations for the conduct of employees in the executive branch. None of these statutes permit the President to enact vaccine mandates—edicts which have no bearing on the accession and conduct of civil servants.

73. Absent statutory authority, Executive Order 14043 is unlawful. This Court should find and declare the Order unlawful, and further enjoin the Agencies from implementing the unlawful Order.

## SIXTH CAUSE OF ACTION
### (Administrative Procedure Act)

### Executive Orders 14042 and 14043, as Implemented by the Agencies, are Arbitrary and Capricious.

74. Paragraphs 1 through 36 are incorporated by reference as though fully set forth herein.

75. The APA permits federal District Courts to review final agency action to ensure the action is not arbitrary or capricious. This review includes Presidential Executive Orders as they are implemented by the Agencies (with the final agency action being the Agencies' implementation of the Executive Orders). The federal District Courts have authority to enjoin the Agencies from enforcing unlawful Executive Orders.

76. "[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983).

77. These mandates are arbitrary and capricious: they do not take into account studies showing the transmission of COVID-19 by vaccinated

individuals, the genetic disposition of some in contracting (or not contracting), the virus, those with natural immunity, nor whether an individual teleworks or works remotely.

78. Federal District Courts must set aside agency action which is arbitrary and capricious; this Court should find the mandates arbitrary and capricious and enjoin Defendant Agencies from enforcing them.

## **RELIEF**

Wherefore, Plaintiffs respectfully pray that this Honorable Court:

1. Declare the Orders unlawful as they violate the Rehabilitation Act and ADA by requiring the Agencies to undertake unlawful medical inquiries;

2. Declare the Orders unlawful as they violate the Rehabilitation Act and ADA by requiring the Agencies to discriminate against individuals based on a perceived disability;

3. Declare the Orders unlawful as they violate the FDCA's requirement for informed consent and opportunity to refuse an FDA unlicensed vaccine;

4. Declare the Orders unlawful as they violate the Due Process Clause of the Fifth Amendment of the U.S. Constitution;

5. Declare Order 14043 unlawful as it exceeds statutory authority;

6. Declare the Orders unlawful as they are arbitrary and capricious;

7. Issue a nationwide order permanently enjoining the Agencies from enforcing Executive Orders 14042 and 14043;

8. Award reasonable attorneys' fees and allowable costs under the Equal Access to Justice Act; and

9. Award any further relief this Honorable Court deems necessary or appropriate in order to accord full and complete relief.

Dated: January 14, 2022                    Respectfully submitted,


/s/ Nick Whitney
Nick Whitney
AndersonGlenn LLP
10751 Deerwood Park Blvd
Suite 105
Jacksonville, FL 32256
Telephone: (904) 273-4734
nwhitney@asglaw.com
Local Counsel

/s/ Carol A. Thompson
Carol A. Thompson
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C.  20006
Telephone:  (202)862-4360
Facsimile:    (888)899-6053
cthompson@fedpractice.com
Application for Special Admission Pending

/s/ John J. Michels, Jr.
John J. Michels, Jr.
Federal Practice Group

1750 K Street N.W., Suite 900
Washington, D.C.  20006
Telephone:  (202)862-4360
Facsimile:    (888)899-6053
lmichels@fedpractice.com
*Application for Special Admission Pending*

*Counsel for Plaintiffs*