UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN DOE #1, et al.,

      Plaintiffs,

v.                                                                        Case No:   8:22-cv-121-JLB-SPF

LLOYD J. AUSTIN, III, in his official
capacity as Secretary of Defense, et
al.,

      Defendants.

---

## **ORDER**

      Plaintiffs in this case are thirty-nine individuals who are currently employed by federal executive agencies or federal contractors and have chosen to not receive a COVID-19 vaccination.  (Doc. 4 at ¶ 1.)  Pursuant to Executive Orders 14042[1] and 14043[2] (the "Vaccination Mandates"), Plaintiffs are required to receive the COVID-

---

[1] Executive Order 14042 "ensur[es] that the parties that contract with the Federal Government provide adequate COVID-19 safeguards" and "comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force."  86 Fed. Reg. 50985 § 2 (Sept. 14, 2021).  The Safer Federal Workforce Task Force included a COVID-19 vaccination requirement for the employees of federal contractors.  See Safer Federal Workforce Task Force, *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors* https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf (Sept. 24, 2021) (last accessed June 10, 2022).

[2] Executive Order 14043 requires COVID-19 vaccinations for all federal employees and provides that "[e]ach agency shall implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law."  86 Fed. Reg. 50989 § 2 (Sept. 14, 2021).

19 vaccination.  (<u>Id.</u>)  Because of their status as unvaccinated persons, Plaintiffs claim that they face termination as federal employees or removal from federal government contracts.  (<u>Id.</u>)  Plaintiffs therefore request that the Court declare the Vaccination Mandates unlawful and issue a nationwide injunction enjoining enforcement of those Executive Orders.  (<u>Id.</u> at 29–30.)

Before the Court is Plaintiffs' Motion to Proceed Under Pseudonym ("Motion") in this action.  (Doc. 22.)  Rather than reaching the merits of the Motion with the scant evidence provided by Plaintiffs—two affidavits filed along with a Reply Brief (Doc. 33-1; Doc. 33-2)—the Court ordered that all 39 Plaintiffs to submit affidavits in support of the motion to proceed under pseudonym.  (Doc. 36.)  The purpose of this order was to enable the Court to conduct the requisite legal analysis—based on record evidence—to rule on Plaintiffs' Motion.[3]  In an abundance of caution, and to

---

[3] The Court's order states the following in relevant part:

> Plaintiffs have provided the Court with two of the thirty-nine Plaintiffs' affidavits in response to this Court's orders (Docs. 30, 31), identifying those individuals by name, where those individuals are employed within the Executive Branch, the capacities in which they are employed, the harm they believe they will suffer if their identities were revealed, and other information they deemed relevant to these proceedings (Docs. [33-1], [33-2]).  Although Plaintiffs have waived argument on their motion to proceed by pseudonym (Doc. [22-1]), such a waiver does not extinguish their burden to offer evidence to support their motion.
>
> It therefore ORDERED that Plaintiffs' counsel, ON OR BEFORE MAY 27, 2022, file a SWORN AFFIDAVIT FROM EACH OF THE THIRTY-NINE PLAINTIFFS in this lawsuit supporting why, under the factors arrayed in <u>S. Methodist Univ. Ass'n of Women Law Students v.</u>

protect the privacy of Plaintiffs, the Court ordered that those affidavits be filed under seal, at least temporarily, until the Court considered the merits of Plaintiffs' Motion.  (Doc. 36.)

In response to the Court's order, Plaintiffs' counsel advised that one plaintiff decided to not proceed forth with this lawsuit, and 22 of the remaining 38 plaintiffs no longer desired to proceed under pseudonyms.  (Doc. 39.)  Defendants, the heads of the federal executive agencies that employ or contract with the Plaintiffs, have responded in opposition to Plaintiffs' Motion.  (Doc. 26.)  Plaintiffs have replied, and Defendants have filed a sur-reply.  (Doc. 29; Doc. 42.)  After careful review of the evidentiary record, motions, and pleadings, the Court finds for the reasons below that Plaintiffs' Motion is DENIED.  The case shall proceed forth with Plaintiffs' true names in this public forum.

## DISCUSSION

Federal Rule of Civil Procedure 10(a) provides that, "Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation.  The title of complaint must name all the parties; the title of the other pleadings, after naming the party on each side, may refer generally to other

---

Wynne & Jaffe, 599 F.2d 707, 713 (5th Cir. 1979) and further expounded upon by the Eleventh Circuit in subsequent opinions, each Plaintiff should proceed under a pseudonym here.  See, e.g., Plaintiff B v. Francis, 631 F.3d 1310, 1316 (11th Cir. 2011) (setting forth factors for district courts to weigh when ruling upon a motion to proceed under pseudonym).

(Doc. 36.)

parties."  Fed. R. Civ. P. 10(a).  Although Rule 10(a)'s inclusion of the mandative word, "must," would yield an all-out ban on any party seeking to proceed with a pseudonym, courts have permitted pseudonymous litigation in limited circumstances.  Such circumstances exist where concealing the plaintiff's identity is necessary to preserving his or her privacy in a sensitive and personal matter.  See, e.g., Doe v. United Services Life Ins. Co., 123 F.R.D. 437 (S.D.N.Y. 1988) (allowing plaintiff to sue insurance company anonymously to protect against identification as a homosexual); Doe v. Deschamps, 64 F.R.D. 652, 653 (D. Mont. 1974) (permitting plaintiff in abortion suit to use pseudonym due to the personal nature of the pregnancy); Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. 464, 468 (E.D. Pa. 1997) (allowing plaintiff to sue pseudonymously given that he was suffering from various severe and stigmatizing mental illnesses).

It is well established that a party may proceed under pseudonym by establishing "a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'"  Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992) (quotation omitted).  Performing this balancing test requires the court to consider whether the party seeking anonymity "(1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of the utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution."  In re Chiquita Brands Int'l Inc., 965 F.3d 1238, 1247 (11th Cir. 2020) (quoting S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599

F.2d 707, 713 (5th Cir. 1979) (hereinafter <u>SMU</u>)).  The court must also "carefully review <u>all</u> the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns."  <u>Id.</u>

Because no criminal conduct is at issue here, only the first and second questions of the <u>SMU</u> balancing test, which deal with challenging a government activity and disclosing intimate information, are germane to the Court's analysis. As to the first question, the caselaw reflects that plaintiffs challenging a governmental activity seem to rarely be permitted to proceed under a pseudonym. <u>See, e.g.</u>, <u>Doe v. City of Vero Beach</u>, No. 2:19-14212, 2019 WL 3751771, at *4 (S.D. Fla. Aug. 8, 2019).  As the Eleventh Circuit has explained, "no published opinion that we are aware of has ever permitted a plaintiff to proceed anonymously merely because the complaint challenged government activity." <u>Roe v. Aware Woman Ctr. for Choice, Inc.</u>, 253 F.3d 678, 686 (11th Cir. 2001).  "To grant this factor dispositive effect would lead, inappropriately, to granting anonymity to any plaintiff suing the government to challenge a law or regulation." <u>Doe v. Merten</u>, 219 F.R.D. 387, 394 (E.D. Va. 2004).

As is the situation here, where public employees sue the heads of the agencies for which they work, "raising an array of public law issues, the public interest in knowing the detail[s] of the litigation that could affect government policy all around the country is particularly great." <u>Oklahoma v. Biden</u>, No. CIV-21-1136-F, 2022 WL 356736, at *5 (W.D. Okla. Feb. 2, 2022) <u>(quotation omitted)</u>.  Because

Plaintiffs here are challenging the constitutional, statutory, and regulatory validity of government activity affecting all federal employees and all employees of government contractors, this first question in the SMU analysis does not weigh in favor of granting Plaintiffs' request to proceed under pseudonyms.  Frank, 951 F.2d at 324; SMU, 599 F.2d at 713.

The second factor of the SMU analysis, which focuses on the disclosure of a plaintiff's intimate details, has historically yielded a confined application. Anonymity has been granted in cases where plaintiffs "would be compelled, absent anonymity, to disclose information of the utmost intimacy" out of a general "policy of protecting privacy" where plaintiffs are required to divulge "personal information of the utmost intimacy."  SMU, 599 F.2d at 713 (quotation omitted).

Matters impacting "personal information of the utmost intimacy" include, for example, abortion, the use of birth control, homosexuality, sexually-exploited minor children, and personal religious beliefs.  See, e.g., Plaintiff B v. Francis, 631 F.3d 1310, 1315 (11th Cir. 2011) (reversing district court's denial of plaintiffs'—all females under the age of eighteen—motion to proceed under pseudonyms, where plaintiffs sued a film distributor for publishing nude pictures and videos of them captured during college spring breaks); Roe, 253 F.3d at 685 (reversing district court's denial of a plaintiff's motion to proceed under a pseudonym, where plaintiff alleged medical injuries sustained during an abortion procedure); Doe v. Stegall, 653 F.2d 180, 186 (5th Cir. 1981) (reversing denial of plaintiffs' motion to proceed under pseudonyms, where plaintiffs challenged the constitutionality of prayer and

Bible instruction in Mississippi public schools); <u>Doe v. United Servs. Life Ins. Co.</u>, 123 F.R.D. 437, 438–39 (S.D.N.Y. 1988) (granting homosexual plaintiff's motion to proceed under pseudonym in case challenging health insurance company's allegedly discriminatory policy because "[c]oncern to avoid public identification as a homosexual is heightened in light of the widespread public fear engendered by the Acquired Immunodeficiency Syndrome ('AIDS') crisis").  Still, "the public's legitimate interest in knowing all of the facts involved, including the identities of the parties . . . creates a strong presumption in favor of parties' proceeding in their own names."  <u>Plaintiff B</u>, 631 F.3d at 1315.

Here, the asserted intimate information which Plaintiffs allege that they will be required to divulge to the public is their "medical vaccine status[es]."  (Doc. 22 at 2, 7.)  Specifically, the record evidence demonstrates that the sixteen affiants seeking to proceed under pseudonym express misgivings about revealing "sensitive," "personal," or "private" "medical information," namely that the affiant is unvaccinated.  (<u>See, e.g.</u>, Doc. 40-2 at 2 ("Publicly revealing my identity will reveal private medical information that would normally be considered private and protected from disclosure to the public or other parties with whom I did not give consent to share."); Doc. 40-4 at 2 ("[P]ublication of my involvement in this lawsuit discloses highly personal medical information."); Doc. 40-6 at 1–2 ("I am now concerned about revealing my identity in connection with this lawsuit because I object to having to reveal sensitive and private medical information that is routinely considered 'private,' especially because releasing this private information is directly

related to the polarizing statements from federal leadership about unvaccinated individuals."); Doc. 40-8 at 1 ("I am concerned that revealing my identity will disclose highly personal medical information (HIPPA).")).

One's COVID-19 vaccination status, by itself, does not rise to the level of "personal information of the utmost intimacy" for which courts have historically granted anonymity.  In factually analogous cases, courts have found that an individual's choice to decline to receive a COVID-19 vaccine is not, on its own, sufficiently sensitive to justify proceeding under pseudonym.  See, e.g., Oklahoma, 2022 WL 356736 at *2 ("A decision to be vaccinated, or not, against COVID-19 is certainly a personal matter, but it is not intrinsically sensitive, let alone highly sensitive."); Doe v. City Univ. of N.Y., No. 21 CIV. 9544 (NRB), 2021 WL 5644642, at *2 (S.D.N.Y. Dec. 1, 2021) (noting that "relying on a medical issue as a basis for anonymity does not withstand analysis" where "there is no independent medical issue separate and apart from plaintiff's refusal to receive a COVID-19 vaccine"); Does 1 through 11 v. Bd. of Regents of Univ. of Colo., No. 21-cv-2637, 2022 WL 43897, at *3 (D. Colo. Jan. 5, 2022) ("[S]tanding alone, a medical condition that is described as unvaccinated against COVID-19 is not so highly sensitive and personal in nature to overcome the presumption of openness in judicial proceedings.").

While some courts have held that an individual's decision to not receive the COVID-19 vaccine is a matter of intimate information, those courts' decisions have hinged on the sensitivity of the disclosure of that individual's religious beliefs, not his or her decision to not receive the COVID-19 vaccination.  See, e.g., Does 1-2 v.

Hochul, No. 21-cv-5067-AMD-TAM, 2022 WL 836990, at *5 (E.D.N.Y. Mar. 18, 2022) ("Nevertheless, the Court recognizes the unique sensitivities that exist within the current political climate and social context, particularly as to Plaintiffs' religious convictions, and finds that this factor tips slightly in Plaintiffs' favor."); Navy Seal 1 v. Austin, No. 8:21-CV-2429-SDM-TGW, 2022 WL 520829, at *1 (M.D. Fla. Feb. 18, 2022) (permitting plaintiffs to proceed under pseudonym where plaintiffs had asserted "that the privacy of their religious beliefs and practice" necessitated the use of a pseudonym).  These cases are therefore distinguishable from the present matter.

While several of the affiants stated that they declined to receive the COVID-19 vaccine at least in part because of their religious beliefs, such religious beliefs were presented as the foundation for the individual's medical choices, not as intimate information unto itself.  In other words, these affiants did not represent that their religious beliefs are sensitive or intimate information.  To the extent that their religious beliefs are implicated, they are merely presented as a rationale behind the affiants' decision to decline a COVID-19 vaccination.  (See, e.g., Doc. 40-11 (first explaining the religious reasons why the individual did not receive a COVID-19 vaccine and then stating the reasons why the individual wants to proceed under pseudonym, namely various professional consequences and fear "that revealing [the affiant's] identity will reveal highly personal medical information, which could have adverse effects on [the affiant's] employment status").

Thus, unlike the religious convictions at issue in <u>Does 1-2</u> and <u>Navy Seal 1</u>, the affiants here do not allege that the religious beliefs grounding their vaccination choices are of the utmost intimacy.  Instead, the gravamen of each affidavit is a fear of revealing "highly personal medical information, which could have effects on [the Plaintiff's] employment status."  (<u>See, e.g.</u>, Doc. 40-11)  Such information is simply not sufficiently intimate to overcome the "strong presumption in favor of parties' proceeding in their own names."  <u>Plaintiff B</u>, 631 F.3d at 1315; <u>see also</u> <u>Oklahoma</u>, 2022 WL 356736, at *3 (finding that "public association with a faith-based objection to vaccination" is not a basis to proceed under pseudonym).

Even if the affiants intended to convey that the intimate information they sought to protect was their religious beliefs, the Motion before this Court makes no mention of Plaintiffs' religious beliefs or whether Plaintiffs sought an exemption from the Vaccination Mandates based on those religious beliefs, as provided for in the Executive Orders they challenge.  <u>See, e.g.</u>, Exec. Order No. 14043, 86 FR 50989, 2021 WL 4148113 ("I have determined that to promote the health and safety of the Federal workforce and the efficiency of the civil service, it is necessary to require COVID-19 vaccination for all Federal employees, <u>subject to such exceptions as required by law</u>" (emphasis added).).

Next, Plaintiffs argue that they wish to proceed under pseudonyms because they believe that the underlying subject matter of their claim "has become extremely politicized."  (Doc. 22 at 1–2.)  Their affidavits profess opaque concerns that statements from the President and other federal government officials

10

encouraging the public to get vaccinated will result in professional repercussions for openly unvaccinated individuals employed by the federal government.  (See Doc. 40-1–40-16.)  One individual explained that he feared being regarded as a "Plague Rat," while another worried that he would be the recipient of "vilifying comments about people who have chosen not to take COVID-19 vaccines."  (Doc. 40-3; Doc. 40-4.)  Other affiants expressed concerns that they would be targeted with derogatory remarks from coworkers and supervisors if they were revealed as unvaccinated, or that they would be pressured by such individuals to get vaccinated, and one individual pointed to incidents of coarse commentary from a supervisor urging him to get vaccinated.  (See, e.g., Doc. 40-2; Doc. 40-5; Doc. 40-6; Doc. 40-7.)  Still others claim that they will be targeted on social media with harassment or mockery.  (See, e.g., Doc. 40-5; Doc. 40-6; Doc. 40-11; Doc. 40-12; Doc. 40-15.)

The Court does not take these concerns lightly and would admonish any federal employer or federal contractor from making such rude, inappropriate, and unprofessional comments.  But ultimately, a desire to avoid uncomfortable workplace conversations is, at its core, a social consideration that is neither highly sensitive nor personal in nature under case precedent.  In fact, many courts within the Eleventh Circuit have declined to grant anonymity to plaintiffs facing the prospect of exposure as an alcoholic, a sex offender, a transgender individual, and even an adult victim of rape.  See Frank, 951 F.2d at 324 (alcoholic); Doe v. Samford Univ., No. 2:21-CV-00871-ACA, 2021 WL 3403517, at *2 (N.D. Ala. July 30, 2021) (sex offender); Doe v. Reyes 1, Inc., No. 5:19-CV-320-TES, 2019 WL 12493582, at *1

(M.D. Ga. Aug. 19, 2019) (transgender individual); <u>Doe v. Sheely</u>, 781 F. App'x 972, 974 (11th Cir. 2019) (rape victim).  Thus, it would be a significant deviation from case precedent if the affiants in this case were permitted to proceed under pseudonym because they fear revealing their vaccination statuses.

Further, the record evidence here simply does not support the vilification that Plaintiffs allege they will face.  Notably, 39 Plaintiffs proceeded forth with this lawsuit with a generalized concern of workplace retaliation for their choice to not receive the COVID-19 vaccination.  (<u>See</u> Doc. 4.)  And just four months after filing their Complaint, more than half of the original Plaintiffs decided that they no longer desired to proceed anonymously.  (<u>See</u> Doc. 39.)  This significant reduction in the number of Plaintiffs seeking to proceed under pseudonyms weighs against Plaintiffs' claim that there is stigma associated being unvaccinated as a federal employee or contractor.  Ultimately, "[a]bsent such stigma, the claim for privacy based upon a medical issue must be waived when one chooses a public forum to settle a private dispute."  <u>Roe</u>, 253 F.3d at 690.

The Court therefore finds that based on the record evidence before it, Plaintiffs have offered an insufficient evidentiary basis to conclude that their decision not to receive a COVID-19 vaccination is one of "the utmost intimacy" to outweigh "customary and constitutionally-embedded presumption of openness in judicial proceedings." <u>Frank</u>, 951 F.2d at 323 <u>(quotation omitted)</u>; <u>Francis</u>, 631 F.3d at 1316.

The Court recognizes that roughly forty percent of the original Plaintiffs in this case maintain their concerns about disclosing their vaccination choices, and this order is not intended to diminish those concerns.  But based on the record before this Court, the <u>SMU</u> balancing test tips in favor of the constitutionally embedded presumption of openness in this judicial proceeding.  That said, the Court expresses no opinion as to the merits of Plaintiffs' claim.  Having sorted out this Motion, the Court will proceed in due course should Plaintiffs choose to proceed forth with this litigation.  For the reasons explained, Plaintiffs Motion to Proceed Under Pseudonym (Doc. 22) is DENIED.

<u>**CONCLUSION**</u>

For the reasons above, it is **ORDERED**:

1. Plaintiffs' Motion to Proceed Under Pseudonym (Doc. 22) is **DENIED without prejudice**.

2. To facilitate compliance with this ruling, it is **FURTHER ORDERED** that any Plaintiffs who elect to proceed as named and identified shall file an Amended Complaint, **not later than June 24, 2022**.  The only change in the Amended Complaint, from the original Complaint (Doc. 4), shall be the identification of the Plaintiffs who elect to proceed as named and identified Plaintiffs.

3. It is ordered that with the filing of any Amended Complaint, the original Complaint (Doc. 4) shall be deemed **DISMISSED without prejudice** as to all individual Plaintiffs referred to in Paragraph 1 in the original

Complaint (Doc. 4) who do not elect to proceed as named and identified

Plaintiffs in the Amended Complaint.

**ORDERED** at Tampa, Florida, on June 10, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE