## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALLEN S. COUTURE, *et al.*,

                      *Plaintiffs,*

      v.

LLOYD J. AUSTIN, III, in his
official capacity as Secretary of
Defense, *et al.*,

                      *Defendants.*

No. 8:22-cv-121-JLB-SPF

## PLAINTIFFS' COMBINED MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE TO TRANSFER, AND PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

## INTRODUCTION

In September 2021, the President issued two Executive Orders, 14042 and 14043 ("Vaccination Executive Orders") that required mandatory vaccination of federal employees and federal government contractors. The Vaccination Executive Orders were issued without the President's Authority and in violation of certain employment statutes and the United States Constitution. Despite numerous legal challenges and various preliminary injunctions issued against both Vaccination Executive Orders, the Orders remained in place for nearly two years. At no point did the President or the

Department of Justice acknowledge the illegality or unconstitutionality of the Orders. To the contrary, in rescinding the Orders, the President lauded the program as the "largest adult vaccination program in the history of the United States." Exec. Order No. 14099, 88 Fed. Reg. 30,891 (May 9, 2023) ("Revocation Executive Order"). With the Vaccination Executive Orders rescinded, Defendants now move for this lawsuit to be dismissed as moot; however, as discussed below, the President's voluntary revocation of the Orders does not moot this case, and the matter should proceed to litigation on the merits.

## FACTUAL BACKGROUND

President Biden announced the issuance of Executive Orders 14042 and 14043 during a speech he gave on September 9, 2021. Pls.' Am. Compl. at ¶ 29. All federal employees and a large subset of federal contractors were required to receive the vaccination, regardless of remote-work capability or previous exposure to COVID-19. *Id.* at ¶¶ 30-33, 38, 41. A federal entity—the Safer Federal Workforce Task Force ("Task Force")—was stood up by the current Administration solely to provide guidance on COVID-19 safety protocols, to include implementation of the Vaccination Executive Orders. *Id.* at ¶ 30.

The Task Force advised the Agencies to implement a policy whereby federal employees who failed to comply with the requirement to be fully vaccinated by November 22, 2021, were to be warned that they were "in violation of a lawful order," and would be "subject to discipline, up to and

2

including termination or removal." *Id.* at ¶¶ 30-33. The Task Force also advised Federal Agencies to incorporate vaccination requirements into all contracts, regardless of if they are covered under Executive Order 14042. *Id.* at ¶ 40. Accordingly, the Plaintiff Contractors were threatened to comply with the vaccination requirement by January 18, 2022. *Id.* at ¶ 41. Defendant Agencies fully implemented this guidance from the Task Force, as required by the Vaccination Executive Orders. *Id.* at ¶¶ 38, 41.

The intent behind these Orders was to remove non-compliant workers and contractors from the federal workforce. This intent was clearly emphasized by President Biden, who stated that the orders were being issued "to protect vaccinated workers from unvaccinated co-workers." *Id.* at ¶ 29.

Yet both Orders were soon subjected to legal challenges and nationwide preliminary injunctive relief, with Order 14042 being enjoined on December 9, 2021, and Order 14043 being enjoined on a nationwide basis on January 21, 2022. *See Georgia v. Biden*, 574 F. Supp. 3d 1337, 1357 (S.D. Ga. 2021), *aff'd in part, vacated in part sub nom. Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022); *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836–37 (S.D. Tex.), *aff'd on reh'g en banc*, 63 F.4th 366 (5th Cir. 2023).

While the scope of the preliminary injunctive relief pertaining to contractors was ultimately narrowed to the plaintiff-States in *Georgia v. Biden*, both injunctions were affirmed on appeal, and remained in place until

May 9, 2023, when President Biden issued Executive Order 14099, which rescinded both Orders and called for a halt in their implementation and enforcement. Revocation Executive Order at § 2. Notably, this revocation maintained the legality of the two previous Vaccination Executive Orders. *Id.* at § 4. Moreover, the Revocation Executive Order 14099 makes clear that the revocation is predicated on certain conditions, stating that this decision was made "[c]onsidering this progress, and based on the latest guidance from our public health experts."[1] *Id.* at § 1. Should those conditions change, the Executive Order keeps the door firmly open for a return of the same mandate. *Id.*

And, while President Biden rescinded both Executive Orders, neither order was ever declared unlawful or unconstitutional (although the preliminary injunctions against both were upheld by the Fifth Circuit and this Circuit with a recognition of the respective plaintiffs' likelihood of success on the merits). Neither case has resulted in a final decision or permanent injunction, and Defendants have carefully preserved their ability to reissue

---

[1] The fact that both orders are addressed in concert in the same Executive Order (E.O. 14099) reinforces the Plaintiffs' need to pursue this single, united effort to address the legality of the vaccine mandate. This supports the sufficiency of venue, as the non-Florida-based Plaintiffs have every right to join their similarly-targeted, Florida-based fellow Federal Government employees in challenging this blatant overreach of the Executive Branch.

COVID-19 vaccine compliance orders. In short, the President and the Executive Branch have continued to maintain that the executive orders were lawful and continue to espouse their shared belief that enforcement of the orders remained legal. *See* Defendants' Motion at 2 ("Defendants vigorously defended those Executive Orders in this case and others.").

## ARGUMENT

### I.     Legal Standards

#### A.     Mootness

The jurisdictional question of mootness looks at whether "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam)). In making this determination the court "look[s] at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued." *Djadju v. Vega*, 32 F.4th 1102, 1106 (11th Cir. 2022).

Examination of the events leading to mootness is important, especially if the mootness was brought on by the defendant through voluntary cessation. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289

5

(1982). When dealing with government defendants, this Circuit has held that challenges to laws that have been "unambiguously" terminated are moot unless there is a "reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022) (quoting *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1285 (11th Cir. 2004)); *see also Atheists of Fla., Inc. v. City of Lakeland*, 713 F.3d 577, 594 (11th Cir. 2013).

"When a plaintiff seeks declaratory relief, a defendant arguing mootness must show that there is no reasonable likelihood that a declaratory judgment would affect the parties' future conduct." *Hartnett v. Pennsylvania State Education Association*, 963 F.3d 301, (3d Cir. 2020) (citing *Rhodes v. Stewart*, 488 U.S. 1, 4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (per curiam)). In this sense, it must be "absolutely clear" that the same acts could not "reasonably be expected to recur." *West Virginia v. EPA*, (2022). The burden of proving lack of recurrence falls on the moving party, *i.e.*, Defendants. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). Where "[t]he only conceivable basis for a finding of mootness in the[e] case is [the defendant's] voluntary conduct," this burden is "heavy." *Id.*

## B.   Standing

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based on either a facial or a factual challenge

6

to the complaint. *McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). A "facial attack" on the complaint "require[s] the court merely look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

    **C.**    **Amend**

    "The Court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Denial of a motion to amend should be limited to instances of undue delay, undue prejudice to the defendants, or futility of the amendment. *Technical Resource Services, Inc. v. Dornier Medical Systems, Inc.,* 134 F.3d 1458, 1463–64 (11th Cir.1998)

**II.**    **Defendants Have Not Met Their Heavy Burden of Showing That the President Will Not Issue Similar Vaccination Executive Orders in the Future.**

    The President may have rescinded the Vaccination Executive Orders but at no point has there been any indication from the President or Defendants that the Orders will not be reissued if circumstances were ever to be similar again. To the contrary, Defendants have vigorously defended their position that the mandates were lawful, despite various legal challenges. *See* Defendants' Motion to Dismiss at 2 ("Defendants vigorously defended those Executive Orders"); and 14 (saying that the revocation "came after years of

7

litigation"). *See also* Revocation Order (stating that the vaccine mandates were "necessary to protect the health and safety of critical workforces serving the American people and to advance the efficiency of Government services,"; that the current Administration "successfully implemented a vaccination requirement for the Federal Government, the largest employer in the Nation"; and that the current Administration "effectively implemented the largest adult vaccination program in the history").

When the government vigorously defends the legality of its approach, the Court *cannot* find the voluntary cessation to be mooting. *West Virginia*, 142 S.Ct. at 2607; *Parents Involved in Community Schools*, 551 U.S. at 719. Neither the President nor Defendants have made any representation that should a similar situation occur, that identical mandates will not be issued. Of course, they have not, and cannot, because it is contrary to their position all along that the Vaccination Executive Orders and subsequent vaccination mandate programs, as implemented and enforced by Defendants, were lawful (and "necessary" and "successful," as noted in the Revocation Executive Order).

Furthermore, and contrary to Defendants' assertions, it appears the Vaccination Executive Orders were rescinded to avoid litigation. The nationwide injunction against Executive Order 14043 was affirmed by the Fifth Circuit, en banc, on March 23, 2023. The Revocation Executive Order was issued on May 9, 2023, just *six days* prior to the mandate being issued by the

Fifth Circuit (issued on May 15, 2023). Of course, the Solicitor General of the United States was considering petitioning for a writ of certiorari (which was granted an extension through July 21, 2023). One can easily surmise that the Revocation Executive Order was issued so as to avoid the Supreme Court ruling against the government, and upholding the Fifth Circuit's decision in *Feds for Med. Freedom v. Biden*.

There is typically less concern for recurrence when the defendant is a government actor. But even that deference did not prevent the Supreme Court from ruling against the Environmental Protection Agency in *West Virginia*. When the Environmental Protection Agency provided no indication it would refrain from reimposing its challenged rule should it prevail in litigation, and after having "vigorously defend[ed] the legality of such an approach," the Court found it *does not*, and could not, dismiss in such circumstances. *West Virginia*, 142 S.Ct. at 2608.

The only way to ensure similar executive orders are not issued in the future, and the only way to ensure Defendant Agencies do not implement similar mandated vaccine programs in the future, is to have them deemed unlawful and unconstitutional by a federal court. To be clear, this will happen again absent court action.

## III.   The Contractor Employees Have Standing to Challenge Executive Order 14042.

Defendants mount a facial challenge to the two Plaintiff Contractors. Defendants' Motion at 17 ("Yet Plaintiffs allege *nothing* about the nature of their employment, the identity of their employers, or the terms of their employer's contractual relationships with the federal government.") (emphasis in original). For this reason, the Court must accept the facts in the pleading as true for this motion.

As alleged in the Amended Complaint, the Task Force provided clarifying guidance, expounding upon the Orders. Specifically, the Agencies were directed to inquire into the vaccine status of all onsite contractors, and to treat any contractor who refused to provide their status as unvaccinated. Am. Compl. at ¶ 39. Additionally, the Task Force encouraged Agencies to implement the vaccine requirement for all contracts, regardless of type and date issued. *Id.* at ¶ 47. Finally, the Agencies "implemented this guidance in its dealings with contractors and have indicated that *any* contractor who is not vaccinated will be removed from the respective contract." *Id.* at ¶ 40. All Contractor Plaintiffs have either not provided their status or remain unvaccinated. *Id.* at ¶¶ 2, 10. Thus, it can reasonably be inferred that the Contractor Plaintiffs faced removal from their government contracts with the respective customer Agencies.

## IV.   Amendment of the Complaint Satisfies Defendants' Issue on Venue.

Defendants argue for dismissal (or, alternatively, transfer to the United States District Court for the District of Columbia, where Defendants reside) because no Plaintiff is alleged to reside in this District. Defendants' Motion at 18-21. The proposed Second Amended Complaint, at paragraph 26, explains that three of the Plaintiffs reside in this District. Under 28 U.S.C. § 1391(e)(1), "Actions Where Defendant is Officer or Employee of the United States," a complaint may be brought where the plaintiff resides (if no real property is involved in the action). As long as one plaintiff resides in the District, venue is proper. *Colonel Financial Management Officer v. Austin*, Case No. 8:22-cv-1275-SDM-TGW, 2022 WL 3643678, at *2 (M.D. Fl. Aug. 18, 2022) (referencing *A.J. Taft Coal Co., Inc. v. Barnhart*, 291 F.Supp.2d 1290, 1302 (N.D. Al. 2003)).

Plaintiffs' motion to amend should be granted because: (1) three of the Plaintiffs reside in this District, thereby making venue proper; and (2) Defendants are not prejudiced—indeed, Defendants were already on notice of the three Plaintiffs and the Agency with which they were affiliated (thereby allowing Defendants to verify the Plaintiffs). For these reasons, the Court should freely grant Plaintiffs leave to amend their complaint to include the residency of the three Plaintiffs in this District.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motions and grant Plaintiffs' Motion for Leave to Amend.

Respectfully submitted,

*/s/ Nick Whitney*
Nick Whitney
AndersonGlenn LLP
10751 Deerwood Park Blvd
Suite 105
Jacksonville, FL 32256
Telephone: (904) 2730-4734
nwhitney@asglaw.com
*Local Counsel*

*/s/ Carol A. Thompson*
Carol A. Thompson
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C.  20006
Telephone:  (202)862-4360
Facsimile:    (888)899-6053
cthompson@fedpractice.com
*Admitted via Special Admission*

*/s/ John J. Michels, Jr.*
John J. Michels, Jr.
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C.  20006
Telephone:  (202)862-4360
Facsimile:    (888)899-6053
lmichels@fedpractice.com
*Admitted via Special Admission*

*Counsel for Plaintiffs*

12

## **CERTIFICATE LOCAL RULE 3.01(g) CERTIFICATION**

Undersigned counsel conferred with Defendants' counsel by email on July 10, 2023, regarding the Motion for Leave to Amend. Defendants do not consent to this motion.

*/s/ Carol A. Thompson*
CAROL A THOMPSON