# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| ALLEN S. COUTURE; DANIEL ) <br> BELL; JAMES MEYERS; ROGER ) <br> NIEHAUS; MARSHALL C. ) <br> COLLINS, II; BRENDA ) <br> CAMPBELL; BOB FINSON; ) <br> KELLY KENNELLY; ) <br> AMANDA GOULD, MATTHEW ) <br> JENKINS; ALLAN MAGNO; KYLE) <br> SERAPHIN; JOSE ACOSTA; ) <br> CAROLYN ALLEN; KYLE ) <br> BARRINGTON, JON BARRON; ) <br> AMANDA BICKNELL; ALVARO ) <br> CONTRERAS, JR.; JARED ) <br> FITZGERALD; TRACY GAMINO; ) <br> MELISSA HERRERA; PATRICK; ) <br> KELLEY; JESSE KUNKLE; ) <br> JASON KUYKENDALL; JOSUE ) <br> MENENDEZ; CARL MILAZZO; ) <br> DAVID STOCK; STEVEN TOWE ) <br> DANIELLE WALKER; CHAD ) <br> BAILEY; DAMON MUSICK; ) <br> DUANE SMITH; DANIEL ) <br> JACKSON; CRYSTAL ) <br> DUCKWORTH; RYAN ) <br> ANDERSON; JUSTIN ) <br> GROSSMAN; GLENN RICCIO; ) <br> DAN LEWIS ) <br> ) <br> Plaintiffs ) <br> v. ) <br> ) <br> LLOYD J. AUSTIN, III ) <br>     Secretary of Defense ) <br>     Department of Defense ) <br>     1000 Defense Pentagon ) | Civil Action No.: 8:22-cv-00121 |

Washington, DC 20301-1000, )
                                     )

ANTONY J. BLINKEN )
    Secretary of State )
    Department of State )
    2201 C St. NW )
    Washington, DC 20520-0001, )
                                       )

MERRICK B. GARLAND )
    Attorney General )
    Department of Justice )
    950 Pennsylvania Ave. NW )
    Washington, DC 20530-0001, )
                                       )

ALEJANDRO N. MAYORKAS )
    Secretary of Homeland )
        Security )
    Department of Homeland )
        Security )
    2707 Martin Luther King, )
        Jr. Ave. )
    Washington, DC 20528-1008, )
                                       )

GINA M. RAIMONDO )
    Secretary of Commerce )
    Department of Commerce )
    1401 Constitution Ave. NW )
    Washington, DC 20230-0002, )
                                       )

TOM J. VILSACK )
    Secretary of Agriculture )
    1400 Independence Ave. SW )
    Washington, DC 20250-0002, )
                                       )

JANET L. YELLEN )
    Secretary of the Treasury )
    1500 Pennsylvania Ave. NW )
    Washington, DC 20220-0002, )
                                       )

WILLIAM J. BURNS )

Director     )
Central Intelligence Agency )
1000 Colonial Farm Rd.  )
McLean, VA 22101   )
         )
   Defendants.  )
         )

## FIRST AMENDED COMPLAINT

On September 9, 2021, President Biden issued Executive Orders 14042 and 14043, mandating that federal employees and contractors provide proof of having been inoculated with an unlicensed COVID-19 vaccine, or face disciplinary consequences in their jobs. In rushing to force COVID-19 vaccinations on the federal workforce, the President's edicts violate longstanding statutory prohibitions against inoculations with unlicensed vaccines; the individual rights of government employees and contractors under the Rehabilitation Act, the Americans with Disabilities Act, and the United States Constitution; and exceed the President's statutory authority in regulating federal employees. Accordingly, plaintiffs who are representative of myriad Federal Agencies respectfully request relief from this Court in the form of injunctive relief stopping these illegal, and unnecessarily broad and wide-ranging mandates.

## PARTIES

1.  Plaintiffs Allen S. Couture, Daniel Bell, James Meyers, and Roger
    Niehaus are employees of Defendant Department of Defense and who have
    been directed to provide their vaccination statuses and receive the COVID-
    19 vaccine under Executive Order 14043. Each Plaintiff either remains
    unvaccinated or has not provided his vaccination status to Defendant
    Department of Defense and faces termination as a federal employee if they
    remain unvaccinated or refuse to provide their vaccination status.

2.  Plaintiff Marshall C. Collins, II is a federal government contractor whose
    customer is Defendant Department of Defense and who has been directed
    to provide his vaccination status and receive the COVID-19 vaccine under
    Executive Orders 14042. Plaintiff either remains unvaccinated or has not
    provided his vaccination status to Defendant Department of Defense and
    faces removal from a federal government contract if he remains
    unvaccinated or refuses to provide his vaccination status.

3.  Plaintiffs Brenda Campbell, Bob Finson, and Kelly Kennelly are
    employees of Defendant Department of Commerce who have been directed
    to provide their vaccination statuses and receive the COVID-19 vaccine
    under Executive Order 14043. Each plaintiff either remains unvaccinated
    or has not provided his or her vaccination status to Defendant Department

of Commerce and faces termination as a federal employee if they remain unvaccinated or refuse to provide their vaccination status.

4. Plaintiffs Amanda Gould, Matthew Jenkins, Allan Magno, and Kyle Seraphin are employees of Defendant Department of Justice who have been directed to provide their vaccination statuses and receive the COVID-19 vaccine under Executive Order 14043. Each plaintiff either remains unvaccinated or has not provided his or her vaccination status to Defendant Department of Justice and faces termination as a federal employee if they remain unvaccinated or refuse to provide their vaccination status.

5. Plaintiffs Jose Acosta, Carolyn Allen, Kyle Barrington, Jon Barron, Amanda Bicknell, Alvaro Contreras, Jr., Jared Fitzgerald, Tracy Gamino, Melissa Herrera, Patrick Kelley, Jesse Kunkle, Jason Kuykendall, Josue Menendez, Carl Milazzo, David Stock, Steven Towe, and Danielle Walker are employees of Defendant Department of Homeland Security who have been directed to provide their vaccination statuses and receive the COVID-19 vaccine under Executive Order 14043. Each plaintiff either remains unvaccinated or has not provided his or her vaccination status to Defendant Department of Homeland Security and faces termination as a

federal employee if they remain unvaccinated or refuse to provide their
vaccination status.

6.  Plaintiffs Chad Bailey, Damon Musick, and Duane Smith are employees of
Defendant Department of Agriculture who have been directed to provide
their vaccination statuses and receive the COVID-19 vaccine under
Executive Order 14043. Each plaintiff either remains unvaccinated or has
not provided his vaccination status to Defendant Department of
Agriculture and faces termination as a federal employee if they remain
unvaccinated or refuse to provide their vaccination status.

7.  Plaintiff Daniel Jackson is an employee of Defendant Department of State
who has been directed to provide his vaccination status and receive the
COVID-19 vaccine under Executive Order 14043. Plaintiff either remains
unvaccinated or has not provided his vaccination status to Defendant
Department of State and faces termination as a federal employee if he
remains unvaccinated or refuse to provide his vaccination status.

8.  Plaintiff Crystal Duckworth is an employee of Defendant Department of
the Treasury who has been directed to provide her vaccination status and
receive the COVID-19 vaccine under Executive Order 14043. Plaintiff
either remains unvaccinated or has not provided her vaccination status to
Defendant Department of the Treasury and faces termination as a federal

employee if she remains unvaccinated or refuse to provide her vaccination status.

9.  Plaintiffs Ryan Anderson, Justin Grossman, and Glenn Riccio are employees of Defendant Central Intelligence Agency who have been directed to provide their vaccination statuses and receive the COVID-19 vaccine under Executive Order 14043. Each plaintiff either remains unvaccinated or has not provided his vaccination status to Defendant Central Intelligence Agency and faces termination as a federal employee if they remain unvaccinated or refuse to provide their vaccination status.

10. Plaintiff Dan Lewis is federal government contractor whose customer is Defendant Central Intelligence Agency and who has been directed to provide his vaccination status and receive the COVID-19 vaccine under Executive Order 14042. Plaintiff either remains unvaccinated or has not provided his vaccination status to Defendant Central Intelligence Agency and faces removal from a federal government contract if he remains unvaccinated or refuses to provide his vaccination status.

11. Defendant Lloyd J. Austin, III, Secretary of Defense, Department of Defense, has implemented the Executive Orders by mandating that all employees of the Agency and all contractors who do business with the Agency be "fully vaccinated" against COVID-19, and provide proof of said

vaccination, or face disciplinary action, up to and including termination or
removal from the contract. The Department of Defense is present in, and
conducts business in, this District.

12. Defendant Antony J. Blinken, Secretary of State, Department of State,
has implemented the Executive Orders by mandating that all employees of
the Agency and all contractors who do business with the Agency be "fully
vaccinated" against COVID-19, and provide proof of said vaccination, or
face disciplinary action, up to and including termination or removal from
the contract. The Department of State is present in, and conducts business
in, this District.

13. Defendant Merrick B. Garland, Attorney General, Department of Justice,
has implemented the Executive Orders by mandating that all employees of
the Agency and all contractors who do business with the Agency be "fully
vaccinated" against COVID-19, and provide proof of said vaccination, or
face disciplinary action, up to and including termination or removal from
the contract. The Department of Justice is present in, and conducts
business in, this District.

14. Defendant Alejandro N. Mayorkas, Secretary of Homeland Security,
Department of Homeland Security, has implemented the Executive Orders
by mandating that all employees of the Agency and all contractors who do

business with the Agency be "fully vaccinated" against COVID-19, and
provide proof of said vaccination, or face disciplinary action, up to and
including termination or removal from the contract. The Department of
Homeland Security is present in, and conducts business in, this District.

15. Defendant Gina M. Raimondo, Secretary of Commerce, Department of
Commerce, has implemented the Executive Orders by mandating that all
employees of the Agency and all contractors who do business with the
Agency be "fully vaccinated" against COVID-19, and provide proof of said
vaccination, or face disciplinary action, up to and including termination or
removal from the contract. The Department of Commerce is present in,
and conducts business in, this District.

16. Defendant Tom J. Vilsack, Secretary of Agriculture, Department of
Agriculture, has implemented the Executive Orders by mandating that all
employees of the Agency and all contractors who do business with the
Agency be "fully vaccinated" against COVID-19, and provide proof of said
vaccination status, or face disciplinary action, up to and including
termination or removal from the contract. The Department of Agriculture
is present in, and conducts business in, this District.

17. Defendant Janet L. Yellen, Secretary of the Treasury, Department of the
Treasury, has implemented the Executive Orders by mandating that all

employees of the Agency and all contractors who do business with the

Agency be "fully vaccinated" against COVID-19, and provide proof of said

vaccination status, or face disciplinary action, up to and including

termination or removal from the contract. The Department of the

Treasury is present in, and conducts business in, this District.

18. Defendant William J. Burns, Director, Central Intelligence Agency, has

implemented the Executive Orders by mandating that all employees of the

Agency and all contractors who do business with the Agency be "fully

vaccinated" against COVID-19, and provide proof of said vaccination, or

face disciplinary action, up to and including termination or removal from

the contract. The Central Intelligence Agency is present in, and conducts

business in, this District.

## JURISDICTION AND VENUE

19. This action is brought under the Administrative Procedure Act (APA), 5

U.S.C. § 701, *et seq.*, challenging the Executive Orders' purposeful evasion

of the statutory requirements set forth under Sections 501 and 503 of the

Rehabilitation Act 1973, as amended (29 U.S.C. §§ 791, 793), Title I of the

American with Disabilities Act (ADA) of 1990, as amended (42 U.S.C. §

12101, *et seq.*) and the Federal Food, Drug, and Cosmetic Act (FDCA) (21

U.S.C. § 360bbb-3, *et seq.*). The Executive Orders further impinge on

constitutional rights, and were issued in excess of the President's

statutory authority to regulate federal employees.

20. Both the Rehabilitation Act and the ADA (together referred to as "the

Acts") preclude employers from discriminating against federal employees

and federal government contractors on the basis of an actual or perceived

disability. The Acts further preclude employers from conducting disability-

related inquiries of employees that are not shown to be "job-related and

consistent with business necessity." 29 C.F.R. § 1630.14(c). An inquiry is

determined to be "job related and consistent with business necessity"

when the employer has a "reasonable belief, based on objective evidence"

that the "employee will pose a direct threat due to a medical condition."[1]

"The determination that an employee poses a direct threat must be based

on an individualized assessment of the employee's present ability to safely

perform the essential functions of the job." 29 C.F.R. § 1630.2(r).

21. The FDCA authorizes the use of medical products not yet licensed by the

Food and Drug Administration (FDA) under "emergency use," but only

when the individual is "informed of the option to accept or refuse the

administration of the product, … and of the alternatives to the product

---

[1] Equal Employment Opportunity Commission (EEOC) Enforcement Guidance on the ADA
and Psychiatric Disabilities at 15, 8 FEP Manual (BNA) 405:7468-69 (1997) (hereinafter
"The ADA and Psychiatric Disabilities").

that are available and of their benefits and risks." 21 U.S.C. § 360bbb-

3(e)(1)(A)(ii)(III).

22. The Fifth Amendment to the United States Constitution confers rights of

bodily integrity and autonomy, and occupational liberty.

23. The mandates were issued under the President's statutory authority

under 5 U.S.C. §§ 3301, 3302, and 7301, which allow the President to

prescribe regulations for the admission of civil servant applicants, the

administration of positions in the competitive service, and the conduct of

employees in the executive branch.

24. The APA permits judicial review of an Executive Order, as implemented

by an Agency, which is arbitrary, capricious, not in accordance with law,

contrary to constitutional right, in excess of statutory authority, and

without observance of procedure required by law. 5 U.S.C. §§ 702, 704,

and 706; *see Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1328

(D.C. Cir. 1996). The declaratory relief requested herein is proper under 5

U.S.C. §§ 706(1)-(2).

25. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is the

judicial district in which Defendants are located and is where a

substantial part of the events or omissions giving rise to the claim

occurred.

26. Moreover, three named-Plaintiffs—Josue Menendez, Roger Niehaus, and
    Steven Towe—reside within the judicial district for U.S. District Court for
    the Middle District of Florida. The actions of Defendants Department of
    Defense and Department of Homeland Security, as alleged in this
    complaint, were taken against the above-named Plaintiffs at their
    respective places of employment, which are also located within the district.

## STATEMENT OF FACTS

## Development of Vaccines

27. Upon best information and belief, the novel COVID-19 infection first
    arrived in the United States in or around January 2020. Just a few short
    months later, then President Trump directed the immediate development
    of a vaccine under Operation "Warp Speed."

28. True to the Operation's name and the novelty of the virus, equally novel
    mRNA vaccines were rapidly produced in short order. For the first time in
    vaccine history, a vaccine was created that did not introduce an inactive
    version of the virus into the human body, but rather was designed to
    "teach our cells how to make a protein—or even just a piece of a protein—
    that triggers an immune response inside our bodies."[2] From this endeavor

---

[2] Centers for Disease Control (CDC), Understanding mRNA COVID-19 Vaccines, available
at: https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mrna.html (last
visited Jan. 3, 2022).

were born three vaccines that were, and are, widely available in the
United States: the Pfizer-BioNTech COVID-19 vaccine, the Moderna
COVID-19 vaccine, and Johnson & Johnson's Janssen COVID-19 vaccine.[3]
None of these vaccines are licensed by the FDA; rather, they have been
authorized for emergency use under 21 U.S.C. § 360bbb-3 and remain
under emergency use authorization as of the time of this filing.[4]

29. On August 23, 2021, the FDA licensed a COVID-19 vaccine originally
developed by BioNTech Manufacturing GmbH, a German company, to be
jointly manufactured with Pfizer. The companies were authorized to
market the vaccine under the name "COMIRNATY."[5] Although co-
manufactured by Pfizer, COMIRNATY is "legally distinct with certain
differences" from the Pfizer-BioNTech COVID-19 vaccine that was, and is,
available in the United States; the Pfizer-BioNTech COVID-19 vaccine,
which is the only Pfizer vaccine available in the United States, remains

---

[3] The Johnson & Johnson vaccine is a viral vector vaccine, not mRNA. Nevertheless, the
CDC encourages individuals to receive an mRNA vaccine over the Johnson & Johnson
vaccine. CDC, Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety,
available at: https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-
vaccines/janssen.html (last visited Jan. 3, 2022).
[4] FDA, Letter of Authorization (Reissued) Janssen COVID -19 Vaccine, available at:
https://www.fda.gov/media/146303/download (last visited Jan. 3, 2022); FDA, Letter of
Authorization (Reissued) – Pfizer-BioNTech, available at:
https://www.fda.gov/media/150386/download (last visited Jan. 3, 2022); FDA, Letter of
Authorization (Reissued) – Moderna, available at:
https://www.fda.gov/media/144636/download (last visited Jan. 3, 2022).
[5] FDA, BioNTech Manufacutring GmbH Biologics License Application Approval (Aug. 23,
2021), available at: https://www.fda.gov/media/151710/download (last visited Jan. 3, 2022).

under emergency use authorization.[6] COMINARTY is not available in the United States. [7]

## Issuance of Mandates

30. President Biden announced the issuance of Executive Orders 14042 and 14043 during a speech he gave on September 9, 2021. He emphasized that while "fully vaccinated" individuals are "highly protected from severe illness even if [they] get Covid-19," and that being fully vaccinated renders these individuals "as safe as possible," the orders were being issued "to protect vaccinated workers from unvaccinated co-workers."[8]

31. Order 14043 requires each Agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees." Exec. Order No. 14043, at § 2. The Agencies are to receive all implementation guidance from the Safer Federal Workforce Task Force (Task Force). *Id.*

---

[6] FDA, "Vaccine Information Fact Sheet for Recipients and Caregivers about COMIRNATY (COVID-19 Vaccine, mRNA) and Pfizer-BioNTech COVID-19 Vaccine to Prevent 2019 (COVID-19) (Aug. 23, 2021)," revised Sep. 22, 2021, at n. 1, attached as Exhibit 4; *see also* FDA "Purple Book" result for COMIRNATY (stating that there is no interchangeable product), available at: https://purplebooksearch.fda.gov/results?query=COVID-19%20Vaccine,%20mRNA&title=Comirnaty (last visited Jan. 3, 2022).

[7] *See* FDA Vaccine Finder, available at: https://www.vaccines.gov/search/ (last visited Jan. 3, 2022), which does not list COMIRNATY as an option for searches seeking vaccination locations in the U.S.

[8] President Biden, Remarks on Fighting the COVID-19 Pandemic, available at: https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/ (last visited Oct. 8, 2021).

32. The Task Force set a deadline of November 22, 2021 for all federal
    employees to be vaccinated.[9] "Employees will be considered fully
    vaccinated for COVID-19 2 weeks after they have received the requisite
    number of doses of a COVID-19 vaccine approved or authorized for
    emergency use by the U.S. Food and Drug Administration."[10] The Task
    Force lists the scheduled deadlines for each vaccine; conspicuously omitted
    from the Force's site is reference to the COMIRNATY vaccine.[11]

33. "Employees who are on maximum telework or working remotely are not
    excused from this requirement."[12] All federal employees, regardless if any
    single employee has previously contracted COVID-19, are required to
    receive the vaccination.[13]

34. Federal employees who failed to comply with the requirement to be fully
    vaccinated by November 22, 2021, "are in violation of a lawful order."[14]
    "Employees who violate lawful orders are subject to discipline, up to and
    including termination or removal."[15]

---

[9] Safer Federal Work Force Task Force, Frequently Asked Questions, "Vaccinations,"
available at: https://www.saferfederalworkforce.gov/faq/vaccinations/ (last visited Jan. 3,
2022).
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*

35. The Task Force states that employees are permitted to request exceptions, but provides nothing further outside of an admonishment that, "All agency personnel designated to receive requests for accommodations should know how to handle requests consistent with the Federal employment nondiscrimination laws that may apply."[16] "If the employee's request for an exception is denied, and the employee does not comply with the vaccination requirement, the agency may pursue disciplinary action, up to and including removal from Federal service."[17]

36. The Task Force provides a link to a "medical exception" request, but the medical exception focuses solely on whether a medical provider determines the individual employee has a "medical condition" which renders the circumstances unsafe for the employee to receive the vaccine.[18] The exception does not allow for a provider to determine if the unvaccinated employee poses a direct threat to others by remaining unvaccinated.[19]

37. Medical exceptions are typically based on "contradictions," or reasons why the vaccine should not be given to the individual. The only contradiction listed for the Pfizer-BioNTech COVID-19 vaccine, the Moderna COVID-19

---

[16] *Id.*

[17] *Id.*

[18] Template – Request for a Medical Exception to the COVID-19 Vaccination, available at: https://www.saferfederalworkforce.gov/downloads/DISABILITY%20REQUEST%20FORM%20-%2020211004_510pm%20-%20MH508.pdf (last visited Jan. 3, 2022).

[19] *Id.*

vaccine, and the Johnson & Johnson/Janssen COVID-19 vaccine is "severe

allergic reaction (e.g., anaphylaxis) to any component of the" respective

vaccine.[20]

38. Each Defendant Agency has fully implemented this guidance.

39. Order 14042 applies to all federal government service contractors and

subcontractors operating on new contracts issued after the date of the

order, or on extensions, renewals, or exercised options which occur on

existing contracts on or after October 15, 2021. Exec. Order No. 14043, at

§§ 5.(a), 6.(a). Agencies are "strongly encouraged" to implement the Order

on all applicable existing contracts. *Id.*, at § 6.(c). The Order directs the

Task Force to provide "explanations of protocols required of contractors

and subcontractors to comply with workplace safety guidance." *Id.*, at §

2.(b).

40. With respect to Order 14042, the Task Force prescribes:

> Prior to contractor employees being subject to a contractual
> requirement to be vaccinated, agencies need to ask about the
> vaccination status of those onsite contractor employees. Onsite
> contractor employees must attest to the truthfulness of the
> response they provide. If an onsite contractor employee chooses

---

[20] FDA, *Pfizer-BioNTech COVID-19 Vaccine EUA Fact Sheet for Healthcare Providers Administering Vaccine*, available at: https://www.fda.gov/media/144413/download (last visited Nov. 16, 2021); FDA, *Moderna COVID-19 Vaccine Fact Sheet for Health Care Providers*, available at: https://www.fda.gov/media/144637/download (last visited Nov. 16, 2021); CDC, Janssen COVID-19 Vaccine, available at: https://www.cdc.gov/vaccines/covid-19/info-by-product/janssen/index.html (last visited Nov. 16, 2021).

not to provide a response, they will be treated as not fully
vaccinated for the purpose of agency safety protocols.[21]

41. The Task Force further advises:

> Agencies are strongly encouraged to incorporate vaccination
> requirements into contracts that are not covered by Executive
> Order 14042, consistent with applicable law. This might include,
> for example, incorporating vaccination requirements into
> contracts in advance of when they are otherwise required by the
> Executive Order or incorporating requirements into contracts
> that are not covered by the Executive Order.[22]

42. Each Agency has implemented this guidance in its dealings with

contractors and have indicated that any contractor who is not vaccinated

will be removed from the respective contract. Contractors currently have a

compliance deadline of January 18, 2022, in which to be fully vaccinated.

[23]

## **Evolving Science: Vaccinated v. Unvaccinated**

### No Difference in Viral Load

43. In issuing the Executive Orders, the President asserted it was the

unvaccinated, not the vaccinated, who were the sole source of COVID-19

---

[21] *See* Safer Federal Work Force, Frequently Asked Questions, n. 9, *supra*.
[22] *Id.*
[23] The Presidential mandate concerning the vaccine of federal contractors has been stayed
by *Georgia v. Biden*, No. 1:21-CV-163, 2021 WL 5779939, at *12 (S.D. Ga. Dec. 7, 2021). The
matter is on appeal, however, and does not address the issues present in this case.

spread. Scientific studies suggest otherwise. On September 29, 2021, a preliminary report from a study conducted by the Genome Center, University of California, Davis, stated that a review of both vaccinated and unvaccinated individuals resulted in the following:

> A total of 869 samples, 500 from HYT and 369 from UeS, were included in the analysis. All analyzed samples from HYT were asymptomatic at the time of collection and 75% of the positive samples were from unvaccinated individuals (N=375). Positive samples from UeS were from both symptomatic (N=237) and asymptomatic individuals (N=132). The frequency of vaccine breakthroughs among the UeS samples (171 fully vaccinated, 198 unvaccinated) was greater than among the HYT samples reflecting the different types of populations sampled. The Delta variant was the predominant variant detected in both populations (Supplementary Table 1).

> There were no statistically significant differences in mean [cycle threshold] Ct-values of vaccinated (UeS: 23.1; HYT: 25.5) vs. unvaccinated (UeS: 23.4; HYT: 25.4) samples. In both vaccinated and unvaccinated, there was great variation among individuals, with Ct-values of 30 in both UeS and HYT data (Fig. 1A, 1B). Similarly, no statistically significant differences were found in the mean Ct-values of asymptomatic (UeS: 24.3; HYT: 25.4) vs. symptomatic (UeS: 22.7) samples, overall or stratified by vaccine status (Fig. 1B). Similar Ct-values were also found among different age groups, between genders, and vaccine types (Supplemental Figure 1).

> In all groups, there were individuals with low Ct-values indicative of high viral loads. A total of 69 fully vaccinated individuals had Ct-values <20. Of these, 24 were asymptomatic at the time of testing.

Exhibit 1, at 6. The study goes on to note:

> A substantial proportion of asymptomatic, fully vaccinated
> individuals in our study had low Ct-values, indicative of high
> viral loads. Given that low Ct-values are indicative of high levels
> of virus, culture positivity, and increased transmission [11], our
> detection of low Ct-values in asymptomatic, fully vaccinated
> individuals is consistent with the potential for transmission from
> breakthrough infections prior to any emergence of symptoms.

*Id.* at 7. Even now, as the Omicron variant has spread, it is increasingly

reported that the majority of those becoming infected with the variant are

vaccinated, as opposed to unvaccinated.[24]

44. The findings of the above study were consistent with others conducted in

Massachusetts and Singapore, in which "individuals with vaccination

breakthroughs caused by the Delta variant had similar Ct-values as

unvaccinated individuals." *Id.* Ultimately, this means the unvaccinated

individual who contracts COVID-19 and has the same Ct-values as a

vaccinated person who contracts COVID-19 is no more likely to spread the

virus than the vaccinated individual. Based on this and other studies,

---

[24] *See, e.g.* "Omicron is spreading at lightening speed. Scientists are trying to figure our why," NPR, Dec. 31, 2021 ("Scientists who traced the superspreader event concluded it was evidence that omicron was 'highly transmissible' among fully vaccinated adults.") reported at https://www.npr.org/sections/goatsandsoda/2021/12/31/1067702355/omicron-is-spreading-like-wildfire-scientists-are-trying-to-figure-out-why (last visited Jan. 5, 2022); "Covid Updates: Omicron Drives New U.S. Virus Cases to a Daily Record," The New York Times, Dec. 29, 2021 ("[It] was increasingly clear that vaccinated people are being infected with Omicron, meaning that there was a reduction in the capacity of vaccines to neutralize the virus...") reported at https://www.nytimes.com/live/2021/12/29/world/omicron-covid-vaccine-tests (last visited Jan. 5, 2022); "Most reported U.S. Omicron cases have hit the fully vaccinated – CDC," Reuters, Dec. 10, 2021, reported at https://www.reuters.com/world/us/most-reported-us-omicron-cases-have-hit-fully-vaccinated-cdc-2021-12-10/ (last visited Jan. 5, 2022).

CDC itself recently acknowledged that the vaccine is not effective at
preventing the spread of the infection.[25]

<u>The Efficacy of Natural Immunity</u>

45. The internet is replete with studies confirming the lasting immunity to
COVID-19 experienced by individuals who have previously contracted the
virus. One notable study is from the Cleveland Clinic, which found that
individuals previously infected with COVID-19 did not suffer reinfection,
and that ultimately, "Individuals who have had SARS-CoV-2 infection are
unlikely to benefit from COVID-19 vaccination." Exhibit 2, at 2.


<u>Genetic Variance</u>

46. For purposes of the ADA and Rehabilitation Act (which require "individual
assessments" to determine "direct threat"), one of the most informative
studies (published in July 2021) researched why some individuals, to

---

[25] *See* "CDC Shifts Pandemic Goals Away from Reaching Herd Immunity,"  L.A. Times,
Nov. 12, 2021, (comments by Dr. Jefferson Jones, CDC COVID-19 Epidemiology Task
Force. "…no vaccine has proved reliable in blocking transmission of the virus…") reported
at https://news.yahoo.com/cdc-shifts-pandemic-goals-away-130028307.html (last visited
Jan. 3, 2022(; "Vaccines appear weak at blocking Omicron, better against severe disease",
Reuters, Dec.13, 2021 (models show that "…early after two doses of an mRNA vaccine from
Pfizer/BioNTech or Moderna (MRNA.O), efficacy against symptomatic infection from
Omicron is only about 30%, down from about 87% versus Delta… Protection against
symptomatic infection is "essentially eliminated" for individuals vaccinated more than four
months earlier.") reported at https://www.reuters.com/business/healthcare-
pharmaceuticals/vaccines-appear-weak-blocking-omicron-infection-shots-may-reduce-long-
covid-2021-12-13/ (last visited Jan. 3, 2022).

include those living in the same households, had drastically different

reactions to the virus, with some contracting the illness and becoming sick

and/or symptomatic, and others not contracting the virus at all. The study

found that it is the "genetic makeup of an individual [that] contributes to

susceptibility and response to viral infection." Exhibit 3, at 1.

## FIRST CAUSE OF ACTION
### (Administrative Procedure Act)

### Agency Implementation of Executive Orders 14042 and 14043
### Require Employers to Conduct Unlawful Medical Inquiries in
### Violation of the Rehabilitation Act and ADA.

47. All preceding paragraphs are incorporated by reference as though fully set

forth herein.

48. The APA permits federal District Courts to review final agency action.

This review includes Presidential Executive Orders as they are

implemented by the Agencies (with the final agency action being the

Agencies' implementation of the Executive Orders). The federal District

Courts have authority to enjoin the Agencies from enforcing unlawful

Executive Orders.

49. Both Orders are in violation of statutes, as they require the Agencies to

conduct unlawful medical inquires.

50. Employers cannot make disability-related inquiries of employees that are

not shown to be job related or consistent with business necessity. An

inquiry is determined to be job related and consistent with business

necessity when the employer has a reasonable belief, based on objective

evidence, that the employee will pose a direct threat due to a medical

condition.

51. "The determination that an employee poses a direct threat must be based

on an individualized assessment of the employee's present ability to safely

perform the essential functions of the job." 29 C.F.R. § 1630.2(r).

52. "This assessment shall be based on a reasonable medical judgment that

relies on the most current medical knowledge and/or on the best available

objective evidence." *Id.*

53. Factors for this consideration include:

> (1) The duration of the risk;
>
> (2) The nature and severity of the potential harm;
>
> (3) The likelihood that the potential harm will occur; and
>
> (4) The imminence of the potential harm.

*Id.*

54. Under the mandates, as implemented by the Agencies, no such individual

can, or will, be conducted, thus making the requirement to inform of one's

vaccine status in the first instance an unlawful disability-related inquiry.

55. A disability-related inquiry is one that seeks to determine if the individual

has a disability. Communicable diseases are considered disabilities. *School*

*Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 289 (1987). By its very

nature, requiring an individual to be vaccinated assumes that at some

point the unvaccinated individual will contract COVID-19, a

communicable disease.

56. But this inquiry cannot be deemed job related because there is no

individual assessment being performed to determine individual threat.

The rigidity of the vaccination mandate—*i.e.*, receive the vaccine or face

termination—does not allow for this necessary, individualized assessment.

57. Not only does the science indicate that whether or how the disease can be

contracted varies by individuals, but there is now indication that

regardless of this disparity, there is little or no difference in potential for

transmission by a vaccinated versus an unvaccinated individual who does

contract the virus.

58. The science is nuanced, and so is an individual assessment. Because the

mandates, as implemented by the Agencies, do not allow for this

individual assessment, the mandates, as they are being implemented by

the Agencies, result in a direct violation of the Rehabilitation Act and the

ADA.

59. Accordingly, because the mandates, as implemented by the Agencies, are

in direct violation of controlling law, this Court must declare the mandates

unlawful and enjoin the Agencies from enforcing them.

## SECOND CAUSE OF ACTION
## (Administrative Procedure Act)

## Agency Implementation of Executive Orders 14042 and 14043 Require Employers to Discriminate Based on a Perceived Disability.

60. All preceding paragraphs are incorporated by reference as though fully set forth herein.

61. The APA permits federal District Courts to review final agency action. This review includes Presidential Executive Orders as they are implemented by the Agencies (with the final agency action being the Agencies' implementation of the Executive Orders). The federal District Courts have authority to enjoin the Agencies from enforcing unlawful Executive Orders.

62. Both Orders are in violation of statutes, as they require the Agencies to discriminate against individuals on the basis of a perceived disability.

63. Both the Rehabilitation Act and the ADA prohibit discrimination of federal employees and federal government contractors on the basis of a perceived disability.

64. Communicable diseases are considered disabilities. Through the issuance of these mandates, it is presumed that an unvaccinated individual at some point will contract COVID-19, a communicable disease.

65. Each Agency, in wholly adopting the Task Force's guidance, has stated that refusal to receive the vaccination will ultimately result in termination of employment or removal from a contract. In other words, the Agency presumes that at some point the unvaccinated individual will contract COVID-19, and is terminating the individual (or in the case of contractors, removing the contractor from the contract with the Agency) on this presumption alone.

66. This is discrimination based on a perceived disability. For this reason, the mandates, as being implemented by the Agencies, cause the Agencies to violate long-standing regulations, statutes, and court decisions, and therefore must be found unlawful. This Court should declare the mandates unlawful and enjoin the Agencies from enforcing the mandates.

### THIRD CAUSE OF ACTION
### (Administrative Procedure Act)

### Executive Orders 14042 and 14043, as Implemented by the Agencies, Violate the FDCA by Requiring Individuals to Involuntarily Receive an Unlicensed Vaccine.

67. All preceding paragraphs are incorporated by reference as though fully set forth herein.

68. The APA permits federal District Courts to review final agency action. This review includes Presidential Executive Orders as they are implemented by the Agencies (with the final agency action being the Agencies' implementation of the Executive Orders). The federal District Courts have authority to enjoin the Agencies from enforcing unlawful Executive Orders.

69. Defendant Agencies are using both Orders to force federal employees and contractors to receive COVID-19 vaccines.

70. Not one single vaccine available in the United States is FDA-licensed; each has only been granted an emergency use authorization status.

71. The FDCA clearly proscribes that a vaccine which has been authorized for emergency use only may not be administered to an individual unless the individual is given an option to refuse or accept the vaccine. In other words, the individual must be given the opportunity to engage in informed consent to the vaccine, and to be able to refuse the shot without consequences to his or her job.

72. By requiring each federal employee and contractor to receive an unlicensed vaccine that has been authorized for emergency use only, the Orders, as implemented by the Agencies, have simply bypassed this statutory requirement.

73. Accordingly, this Court should find and declare the Orders unlawful as
    they are in violation of the FDCA, and further enjoin the Agencies from
    implementing the unlawful Orders.

## FOURTH CAUSE OF ACTION
### (Administrative Procedure Act)

### Executive Orders 14042 and 14043, as Implemented by the Agencies, Violate the Procedural Due Process Clause of the Fifth Amendment of the U.S. Constitution.

74. All preceding paragraphs are incorporated by reference as though fully set
    forth herein.

75. The APA permits federal District Courts to review final agency to ensure
    the action is not in violation of constitutionally protected rights. This
    review includes Presidential Executive Orders as they are implemented by
    the Agencies (with the final agency action being the Agencies'
    implementation of the Executive Orders). The federal District Courts have
    authority to enjoin the Agencies from enforcing unlawful Executive
    Orders.

76. The Fifth Amendment confers a protected right to Occupational Liberty.
    Through termination of an employee or removal of a contractor from a
    contract on the sole basis of remaining unvaccinated, the Defendant
    Agencies impose upon the Plaintiffs a stigma and disability which

preclude future employment in the same profession; this act of permanent disqualification implicates and violates Plaintiffs' right to Occupational Liberty.

77. The Fifth Amendment confers a protected right of bodily integrity and autonomy, allowing individuals to refuse coercive medical treatment without consent. The mandates' coercive nature, requiring individuals to choose between their professions and livelihoods, or to receive unwanted medical injections, presents a substantial interference with this constitutionally protected right.

78. The mandates, when fully enacted by Defendant Agencies, violate both constitutional rights. The Court should find and declare the Orders unlawful, and further enjoin the Agencies from implementing the unlawful Orders.

## FIFTH CAUSE OF ACTION
### (Administrative Procedure Act)

### Executive Order 14043, as Implemented by the Agencies, Exceeds Statutory Authority.

79. All preceding paragraphs are incorporated by reference as though fully set forth herein.

80. The APA permits federal District Courts to review final agency action to ensure the action is not in excess of statutory authority. This review

includes Presidential Executive Orders as they are implemented by the

Agencies (with the final agency action being the Agencies' implementation

of the Executive Orders). The federal District Courts have authority to

enjoin the Agencies from enforcing unlawful Executive Orders.

81. There is no statute which permits the President to issue or enforce this

mandate.

82. Executive Order 14043 was issued pursuant to the President's stated

authority under 5 U.S.C. §§ 3301, 3302, and 7301. Section 3301 allows the

President to make regulations regarding the application and admission of

prospective civil servants. Section 3302 allows the President to make rules

governing the operation of the competitive service, and when individuals

may be excepted from competitive service. Section 7301 permits the

President to prescribe regulations for the conduct of employees in the

executive branch. None of these statutes permit the President to enact

vaccine mandates—edicts which have no bearing on the accession and

conduct of civil servants.

83. Absent statutory authority, Executive Order 14043 is unlawful. This

Court should find and declare the Order unlawful, and further enjoin the

Agencies from implementing the unlawful Order.

## SIXTH CAUSE OF ACTION
### (Administrative Procedure Act)

### **Executive Orders 14042 and 14043, as Implemented by the Agencies, are Arbitrary and Capricious.**

84. All preceding paragraphs are incorporated by reference as though fully set forth herein.

85. The APA permits federal District Courts to review final agency action to ensure the action is not arbitrary or capricious. This review includes Presidential Executive Orders as they are implemented by the Agencies (with the final agency action being the Agencies' implementation of the Executive Orders). The federal District Courts have authority to enjoin the Agencies from enforcing unlawful Executive Orders.

86. "[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983).

87. These mandates are arbitrary and capricious: they do not take into account studies showing the transmission of COVID-19 by vaccinated individuals, the genetic disposition of some in contracting (or not contracting), the virus, those with natural immunity, and whether an

individual works in full telecommute status.

88. Federal District Courts must set aside agency action which is arbitrary

and capricious; this Court should find the mandates arbitrary and

capricious and enjoin Defendant Agencies from enforcing them.

## **RELIEF**

Wherefore, Plaintiffs respectfully pray that this Honorable Court:

1. Declare the Orders unlawful as they violate the Rehabilitation Act
   and ADA by requiring the Agencies to undertake unlawful medical
   inquiries;

2. Declare the Orders unlawful as they violate the Rehabilitation Act
   and ADA by requiring the Agencies to discriminate against
   individuals based on a perceived disability;

3. Declare the Orders unlawful as they violate the FDCA's
   requirement for informed consent and opportunity to refuse an FDA
   unlicensed vaccine;

4. Declare the Orders unlawful as they violate the Due Process Clause
   of the Fifth Amendment of the U.S. Constitution;

5. Declare Order 14043 unlawful as it exceeds statutory authority;

6. Declare the Orders unlawful as they are arbitrary and capricious;

7.  Issue a nationwide order permanently enjoining the Agencies from

enforcing Executive Orders 14042 and 14043;

8.  Award reasonable attorneys' fees and allowable costs under the

Equal Access to Justice Act; and

9.  Award any further relief this Honorable Court deems necessary or

appropriate in order to accord full and complete relief.

Dated: June 24, 2022                    Respectfully submitted,


/s/ Nick Whitney
Nick Whitney
AndersonGlenn LLP
10751 Deerwood Park Blvd
Suite 105
Jacksonville, FL 32256
Telephone: (904) 2730-4734
nwhitney@asglaw.com
Local Counsel

/s/ Carol A. Thompson
Carol A. Thompson
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C.  20006
Telephone:  (202)862-4360
Facsimile:    (888)899-6053
cthompson@fedpractice.com
Admitted via Special Admission

/s/ John J. Michels, Jr.
John J. Michels, Jr.
Federal Practice Group
1750 K Street N.W., Suite 900
Washington, D.C.  20006

Telephone:  (202)862-4360
Facsimile:   (888)899-6053
lmichels@fedpractice.com
*Admitted via Special Admission*

*Counsel for Plaintiffs*